*Lancaster,*
*Saturday,*
*June 2.*

## Lessee of GALLOWAY *against* OGLE.

When a claim, set up by a third person to a warrant and survey, remains undisputed for the space of between thirty and forty years, and there is nothing to shew that the warrantee has transferred his title to any one else, it is strong evidence to prove that the right of the warrantee vested in the claimant, by some conveyance which is lost.

A tenant cannot resist his landlord's recovery, by virtue of an adverse title, acquired during his lease.

The copy of a list of lands belonging to a person deceased, made out fifty years before the trial by his executor who is also deceased, is not evidence; nor would the original be, if produced.

THIS was an appeal from the decision of Judge *Bracken-ridge* at a Circuit Court for *Dauphin.*

It was an ejectment for a tract of land, under the following circumstances: The plaintiff claimed under a warrant to *David M‘Nair* for 100 acres, dated the 23d of *August* 1742, upon which a survey of 398 acres and a half was made in *October* 1743, as appeared by the notes of the deputy surveyor, although the survey was not returned. This survey was claimed by *Thomas Cookson,* who by his will dated the 15th of *March* 1753, devised his estate to his wife and children. *Galloway,* the lessor of the plaintiff, married one of *Cookson's* daughters, and in 1762, on a partition of *Cookson's* estate, the premises in the ejectment, being the survey under *M‘Nair's* warrant, were allotted to *Galloway* and wife, and *possession delivered* to them by the sheriff. *Galloway* afterwards acquired in fee-simple all the estate of *Cookson* in this land. Before and up to the 27th *November* 1773, *Thomas Ogle* the father of the defendant held the premises under a lease from *Galloway;* and on that day *Galloway* contracted with *Henry Weaver* to sell him the land, but no conveyance was to be made until payment of the purchase money. *Weaver,* being in possession under *Galloway,* in the year 1781, made an improving lease for seven years to *Ogle,* who covenanted to perform the terms &c., and to deliver up possession at the end of his lease. The purchase-money not being paid by *Weaver, Galloway* brought an ejectment against him in 1793, upon which he obtained judgment in 1800, and then brought the present ejectment.

In order to prove that *Cookson* was entitled to *David M‘Nair's* warrant, the plaintiff offered in evidence the deposition of *Richard Peters,* together with a paper annexed, purporting to be the *copy* of " a list of lands of Mr. *Cookson* " taken from his papers on the 28th and 29th *March* 1753," in which the warrant of *M‘Nair,* and a deed-poll from him to *Cookson* on the 14th *October* 1744 were mentioned. On

this paper was a certificate by *Benjamin Chew*, esq., that the indorsement on the original paper (which together with the deed-poll was lost) was in the handwriting of the reverend Dr. *Richard Peters* deceased, who was the executor of *Cookson;* and the deposition stated that the certificate subjoined to, and the indorsement on this copy were in the handwriting of Mr. *Chew*, and that the witness had a recollection tolerably perfect of the original paper, which he had seen in the handwriting of his uncle the said *Richard Peters* deceased, and verily believed the transcript thereof as certified by Mr. *Chew*, to be a true copy.

This deposition and paper were objected to, and overruled by the court.

The defendant set up the following title. In *October* 1784, while *Ogle* was in possession under *Weaver*, he purchased the right of *Dunning* and *John M'Nair*, who set up a claim in right of *David M'Nair* to the original warrant; but there was no proof that they were the heirs of *David M'Nair*, nor was there any evidence by which a title could be deduced from *David M'Nair* to them. A warrant of resurvey for 90 acres and one quarter was taken out in the same year on *David M'Nair's* warrant of 1742; and in 1797 *Ogle* took out a warrant for 109 acres including a supposed improvement in 1745, adjoining the lands of *Joseph Galloway* and others, upon which a survey of 109 and a half acres was made in the same year. These two surveys, which were part of the 398 acres claimed by *Cookson*, were patented to *Ogle* on the 20th of *April* 1797, the patent reciting that the title to part was derived from *David M'Nair*. On the death of *Ogle*, the defendant his son took the land upon a valuation; but there was no proof that he had paid any money upon it.

The plaintiff's counsel contended. 1. That no person except *Cookson* and those under him having set up any pretensions to *David M'Nair's* warrant from 1742 to 1784, there was a violent presumption that it had been conveyed by *M'Nair* to *Cookson*, by some instrument that was lost; and that this was all that was wanting to make the plaintiff's title indefeasible. 2. That without regard to title, there was positive evidence of uninterrupted and undisputed posses-

sion in *Cookson* and the lessor of the plaintiff, from 1753 to 1777, which was sufficient to entitle the plaintiff to recover in this action against a defendant who had no title. 3. That so much of the defendant's claim as was pretended to spring from *David M'Nair*, was entirely without foundation, because no right was deduced from him to *Dunning* and *John M'Nair*, of whom the defendant's father bought, and the recital in the patent availed nothing against the plaintiff; and that as to the residue, the supposed improvement in 1745 was a fiction, and *Ogle* knew that the land was covered by *M'Nair's* warrant. 4. That whatever might be the state of the titles, it was not competent to *Ogle*, who had been the tenant of *Galloway*, and was the tenant of *Weaver* the representative of *Galloway* at the time he bought the adverse title, to deny his landlord's title. And 5. That the defendant did not stand in the light of a purchaser without notice, because he had paid no part of the valuation upon which he had taken the land; but that he stood precisely in the situation of his father, and was equally estopped from controverting the plaintiff's title.

The counsel for the defendant answered, 1. That the survey not having been made for *Cookson*, nor any knowledge of, or assent to, his claim, brought home to *David M'Nair*, the lapse of time furnished no evidence of a transfer by *M'Nair*. 2. That the possession, which went no further back than 1762, when it was delivered to *Galloway* under the partition, was not sufficient by itself, because *it* had been given up to *Weaver*, and because the defendant had title. 3. That the recital in the patent was evidence to shew that the *M'Nairs* who sold to *Ogle*, had a right to *David M'Nair's* warrant, because that fact must have been proved at the land-office; and that the improvement was a good foundation for the warrant and survey in 1797. 4. That *Ogle* was not precluded from purchasing an adverse title, although he might have been estopped from setting it up during his lease; but that this objection could not hold, as the ejectment was not brought until long after the lease expired. And 5. That the defendant was in a better situation

than his father, having taken the land at a valuation, and agreed to pay for it, without notice of *Galloway's* claim.

The jury found for the defendant; and a motion for a new trial being overruled, the plaintiff appealed.

The cause was here argued by *C. Smith* for the plaintiff, and by *Duncan* for the defendant, upon the same points that were made below, together with the point of evidence, which the plaintiff's counsel contended had been erroneously ruled by his Honour.

TILGHMAN C. J., after stating the facts, delivered his opinion as follows:

The title of *Cookson* having been regularly deduced to *Galloway*, there was nothing to prevent his recovery but the want of a conveyance from *David M'Nair* the original warrantee to *Cookson*. But there was no evidence of any claim under *M'Nair* adverse to *Cookson*, being set up, till the year 1784; nor was there any evidence (except the recital in *Ogle's* patent) that the title set up in 1784 was legally deduced from *David M'Nair*. The recital in that patent, although conclusive between the commonwealth and the patentee, has no weight against third persons claiming under a title adverse to the patent. Considering that estates held by warrant and survey, were in former times looked upon as *personal* property, and subject to alienation with less form than patented lands, that *Cookson* had possession of this land at a very early period, and that *Galloway* had the possession under *Cookson's* title formally delivered to him on a writ of partition, so long ago as the year 1762, there appears great reason to suppose that the right of *David M'Nair* had been vested in *Cookson*, by some writing which may have been lost. If this had not been the case, it is difficult to account for the long and uninterrupted possession by *Cookson*, and those claiming under him. But the plaintiff's case does not rest solely on this presumption. It was improper conduct in *Thomas Ogle* to retain possession under a title adverse to the lease under which he obtained possession. He had a right, to be sure, to purchase any title that he pleased; but he ought in strict morality to have given up the possession, according to contract, at the end of his lease, and then

brought his ejectment under his own title. It has been decided, and is the settled law of the country, that a tenant shall not resist the recovery of his landlord, by virtue of an adverse title acquired during his lease. This principle is founded on sound policy, because it tends to encourage honesty and good faith between landlord and tenant. The present case is not precisely what I have mentioned, because *Thomas Ogle* did not take his last lease from *Galloway*, but from *Weaver*. There is evidence indeed of his confessing that he held under *Galloway* before he took the lease from *Weaver*, but that was before he made the purchase of *M'Nair*. There is no occasion to give an opinion, whether under these circumstances the defendant should be *precluded* from disputing *Galloway's* title in this ejectment. But it is certain, that the manner in which *Thomas Ogle* came into possession is a fact entitled to considerable weight. From that circumstance, in conjunction with others which I have mentioned, it appears to me that the weight of evidence was so greatly against the verdict, that the justice of the case calls for a reconsideration. I am therefore of opinion that a new trial should be granted.

There was a point of law which arose on the trial, respecting the admissibility of the deposition of *Richard Peters* as evidence; I have not thought it necessary to enter into that point, but my opinion is, that the deposition was very properly rejected.

YEATES J. One of the reasons of appeal urged in this case was, that the Circuit Court overruled the deposition of *Richard Peters*, esq. taken in pursuance of a rule of court, and the paper referred to therein.

It is clear to me, that if the original paper indorsed by Dr. *Peters* had been produced on the trial, and fully proved to have been written by him, the same could not have been received in evidence; because it would amount to no more than the written declaration of a person, now deceased, that he had seen such papers and examined them. It would be mere hearsay without oath, and could not be admitted to establish the fact of the existence of a conveyance of the warrant-right in the year 1753. It necessarily follows, that

a copy being a further remove from the fact thus attested could not be received; and the deposition of *Peters* only goes to shew that he believes the transcript to be a true copy of the original paper, not that he himself had seen the deed-poll referred to therein. I have no doubt that the deposition and paper were properly overruled.

Whether a nonassertion of title by *M'Nair* the warrantee and the persons asserting themselves to be his heirs, for the period of forty years and upwards, might not justify the inference either that he had released his right, or that he was a bare trustee for *Cookson*, was a fact which the jury could decide. It was certainly a strong circumstance operating against the defendant's pretensions. But the plaintiff's counsel have contended, that he was entitled to recover under the circumstances of this case on his prior possession; and it is certain, that there is a *jus possessionis* as well as a *jus proprietatis*, which in many instances will entitle the party to a verdict in ejectment. *Vaugh.* 299. *Cro. Eliz.* 437. 2 *Johns.* 22.

[Judge Yeates then stated the facts and proceeded as follows:]

Under this statement of facts the question occurs, whether the plaintiff was entitled to recover? No rule of law is better settled, than that a tenant shall not dispute the title of his landlord. It is manifestly against good faith, and tends to great immorality. Neither shall a mortgagor dispute the title of the mortgagee. The tenant coming into possession under his landlord, ought to surrender it up when his lease is expired. The latter may enter upon the former when the term is ended, and may justify it in trespass under the plea of *liberum tenementum;* though if he dispossesses him by force and with a strong hand, he may be indicted for a forcible entry. The tenant, by the practice of the *English* courts of equity, cannot compel his landlord to interplead, unless where the claim of a third person arises by the act of the latter subsequent to the lease. Tenants who hold over their terms will not be permitted to set up a title in a third person against their landlords, whose titles they had acknowledged, and held under by their leases. *Colles' Parl. Cas.* 122. The same principle of reason and sound policy equally applies in the cases of other persons claiming

or coming into possession under such lessees; and it is observable that our act of assembly of the 21st *March* 1772 gives the same summary remedy in either instance. 1 *Dall. St. Laws* 617. Nothing under sect. 13. of that act shall prevent a restitution of the demised premises, " but a right " or title accrued or happening since the commencement of " the lease, by descent, deed, or from or under the last will " of *the lessor.*" 1 *Dall. St. Laws* 618. And in this particular the provisions of this act correspond with the rule adopted in Chancery in *England*, as to the right of the tenant to oblige his landlord to interplead. In the case of *Jackson* v. *Harder, Kent* chief justice delivered the opinion of the Supreme Court of *New York*, that a plaintiff in ejectment shewing a possession of eight or ten years, under a claim and colour of title, was entitled to recover. It was clear beyond all doubt, said he, that the party who entered and held under the plaintiff, would be concluded from setting up any adverse title, and any person who succeeded to the possession under him would be concluded. The defendant there was either an intruder, or he entered under the plaintiff's title; and in either case, he was precluded from questioning the plaintiff's right of possession. 4 *Johns. Rep.* 210. 211. The late recovery in *Philadelphia* by Dr. *Gardiner* against the Schuylkill Bridge Company, was founded solely on the right of possession. The defendant's father first came into possession as the tenant of *Galloway*, and afterwards became the tenant of *Weaver*, to whom *Galloway* agreed to sell, but reserved the title in himself till the terms of sale were complied with. That contract being rescinded, he continued to be the tenant of *Galloway*. The interest of the warrantee was not deduced to him, if it was even competent to him to set it up against his landlord. The son can be in no better situation than his father; and upon the whole matter I am of opinion, that a new trial should be awarded, and that the costs of the former trial should await the event of the suit.

New trial awarded.