## Taylor *against* Dougherty.

A return of unseated land to the County Commissioners for taxation, and the payment of the taxes for thirty years, are *prima facie* evidence of ownership of the warrant upon which the land was surveyed : and in an action of ejectment against a naked intruder who entered with notice of the plaintiff's claim, are conclusive, without other evidence of a conveyance by the warrantee, who under such circumstances will be considered as having been a trustee for the owner.

ERROR to the Common Pleas of *Clearfield* county.

Robert Dougherty and Robert Mehaffy against Daniel Taylor. This was an action of ejectment, in which the plaintiffs gave in evidence a warrant to Henry Kepple dated 12th of May 1773, for 300 acres of land : a survey thereon of 117 acres, regularly

[Taylor v. Dougherty.]

returned, being the land in dispute: a patent to Robert M'Clay dated 2d of May 1833, and a regular chain of title from M'Clay to the plaintiffs.

The defendant then proved that he had made an actual settlement on the land in 1830, prior to the date of the plaintiffs' patent, and had been in possession ever since.

The plaintiffs then gave evidence to prove that the land was returned for taxation by Samuel M'Clay, the ancestor of Robert M'Clay, as early as 1805, and that the taxes had been paid from that time to the time of trial of the cause; and this for the purpose of establishing the conclusion that Henry Kepple, the warrantee, was but a trustee for Samuel M'Clay, who was the real owner of the warrant.

The plaintiffs also proved that the defendant, Taylor, had full notice of M'Clay's claim before he entered upon the land.

The court below thus charged the jury:—

BURNSIDE, President.—The plaintiff has shown a warrant of 1773, and a survey made thereon by Thomas Smith, the proprietary's deputy before the revolution, and a patent in 1833 to Robert M'Clay, the youngest son of Samuel M'Clay, deceased, the will of Samuel M'Clay proved in 1811, and a release from his other children to Robert. The plaintiff has further shown, that as soon as Clearfield county was attached to Centre, it was then taxed as the property of Samuel M'Clay in Centre. Plaintiff has shown that the taxes were paid in Centre for 1805, 1806, 1807, 1808, 1809. It has further been shown that the heirs of Samuel M'Clay were charged with the taxes in Clearfield county, and the books show them paid for 1814 to 1834 inclusive. They were assessed the intermediate years for 1810 to 1813 inclusive, and the taxes assessed were subsequently paid. The evidence is that for thirty years M'Clay and his children paid the taxes on these lands. There is further evidence by Greenwood Bell, that Taylor, before he entered in 1829, made a visit to M'Clay, and had received an introduction to him. The land being surveyed, returned, and patented, and proof of claim and payment of taxes for twenty-one years and more, it is the opinion of the court, enables the plaintiff to recover against an intruder, where the assessors, commissioners, and all the officers of the county treat a tract of land as belonging to a particular person, and when the intruder has knowledge and means of knowledge of the owners. The person so paying taxes has a right to recover against such intruder without showing a regular, unbroken chain of title or a deed from the warrantee when that title is carried back beyond the entry of the intruder.

*Smith* and *Wallace,* for plaintiff in error. The plaintiffs below showed no title to the land prior to the patent in 1833, which was subsequent to the defendant's actual settlement and possession of

I. — 2 c

the land.   It has never been held that the mere payment of taxes gives title to land, or even makes up a defect in the chain of title. Conceding, then, for the sake of argument, that the taxes were paid by M'Clay for thirty years, (which, however, was not proved in the cause) can that give him, and those claiming under him, a title to the land ?   But it did not appear by whom the taxes were paid.   9 *Watts* 84; 10 *Watts* 141.

*Wallace* and *Blanchard*, for defendants in error, argued that the question was not whether the payment of taxes gave *title to* the land, but whether the title, shown to have been perfect, belonged to the defendant.   The plaintiffs gave evidence of a warrant, survey, and patent in pursuance of it, to Samuel M'Clay under whom they claimed; and the question was whether *that* warrant, which, by the custom in Pennsylvania, was often in the name of a trustee, really belonged to M'Clay; and all the court below said, was, that the return of the land by M'Clay for taxation, and the payment of taxes for thirty years, lead irresistibly to the conclusion that the warrant belonged to M'Clay, and that Kepple, who, in all that time, had never pretended to claim the land, was a mere nominal owner—a trustee for the owner.

The opinion of the Court was delivered by
GIBSON, C. J.—The only question in the cause is, whether there is such evidence that the title under the warrant to Kepple is vested in the plaintiffs as ought to have gone to the jury; all the others, except those relating to hand-writing, and they are well enough, are resolvable into that.   The plaintiffs claim under a patent to one of their predecessors, and against whom?   A naked intruder, who entered, with full knowledge of the fact, in the guise of a settler on warranted land which was not open to settlement, and who is consequently entitled to no favour.   The land was warranted and surveyed in 1773, in the name of Henry Kepple, of whom nothing has since been heard, during a period of near seventy years; while those under whose title the plaintiffs claim, exercised the only ownership over the warrant, of which, as a title to wild land, it was susceptible—they paid the only taxes for it that have ever been assessed on it, and this from 1805 till the trial of the cause.   Surely, if the beneficial ownership had been in Kepple, he, or his representatives, would have claimed it long before.   The presumption from time alone of an intermediate conveyance from him, as a trustee, would be sufficient to go to a jury as *prima facie* evidence of the fact.   Samuel M'Clay was at least the reputed owner of this warrant; and he, or his children, exercised all the onerous acts of ownership incident to the relation, which were exercised by any one.   And the presumption of a conveyance in a case like the present arises more readily than in any other, from the well-known fact that in the days of the proprie-

[Taylor v. Dougherty.]

tary officers, as was said in *Cox* v. *Grant,* (1 *Yeates* 166) the person whose name was used in a warrant or location stood as a trustee for him who took out the title and paid the expense of the survey. The same thing was said in *Weidman* v. *Kohr,* (13 *Serg. & Rawle* 17.) Between parent and child, reputation alone was held sufficient to raise or rebut a trust; as in *Sampson* v. *Sampson,* (4 *Serg. & Rawle* 331;) but continued acts of ownership superadded make the presumption extremely strong. In *Galloway* v. *Ogle,* (2 *Binn.* 468) a claim to a warrant and survey persisted in for thirty years, without counter claim by any one, was received as *primâ facie* proof that the right had been vested in the claimant by a conveyance, afterwards lost; and in *Evans* v. *Nargong, (id.* 55) the procuring of a survey on a warrant in the name of another who had made no claim, was taken for *primâ facie* evidence of ownership, though the deputy surveyor had returned the survey as in dispute betwixt his employer and the warrantee.

The case before us is much stronger, for we have the expenditure of money, not in a single contested act of ownership, but in acts repeated and persisted in for more than thirty years, as regards the ownership of the warrant, and without any adverse claim to it whatever. On every principle of authority and reason, this was sufficient not only to be left to the jury, but in the absence of conflicting evidence to command a verdict. The execution of a deed is presumed from possession in conformity to it for thirty years; and why the entire existence of a deed should not be presumed from acts of ownership for the same period, which are equivalent to possession, it would not be easy to determine. It is unnecessary to examine the exceptions in detail, as those which are independent of the main principle are palpably unfounded.

Judgment affirmed.