## Dougherty *v.* Welshans, Appellant.

*Real estate—Adverse possession—Uncultivated lands—Legal title.*

1. Where lands are wild and mountainous, and have never been the subject of an actual pedis possessio, proof of actual possession is not required to show the right of possession, inasmuch as the legal title to such lands draws to it the possession.

*Real estate—Deed—Presumption of grant—Quieting title—Ancient Deeds—Recitals—Ejectment.*

2. After a great lapse of time and a series of circumstances disclosing the enjoyment of an unchallenged title to land during such period, the courts will presume whatever grant may be necessary to quiet the title; and such presumption may be invoked not only against a mere intruder, but also against one claiming under color of title.

3. If an outstanding title in a third party is set up as a defense in an action of ejectment, it must be a present subsisting one, otherwise it will be presumed to have been extinguished by a conveyance to the one who has asserted title to and exercised rights of ownership over the land for a long period of years.

4. Recitals in ancient deeds, where possession accompanies the

deed, are prima facie evidence of the facts recited even against third persons.

5. In an action of ejectment it appeared that the plaintiff's predecessor in the line of the record title had purchased the land sixty years before the institution of the suit at an orphans' court sale for the payment of a decedent's debts. In the deed from the administratrix to the purchaser there was a recital that the title of the original patentee from the state "by sundry conveyances became vested in" the decedent. There was nothing on the record and no evidence otherwise to show how the title had passed from the original patentee to the decedent. The defendants in the ejectment claimed title under a tax sale made years after the date of the deed. *Held*, (1) that the deed was admissible in evidence; (2) that the recital in the deed, while not conclusively showing title in the decedent, was evidence in connection with the other facts and circumstances to be considered as a foundation for the presumption of a grant to the decedent; (3) that the recital could be considered as evidence to raise a presumption, although by the form of its offer it was to show title in the decedent.

*Ejectment—Tax title—Unseated lands—Seated lands.*

6. In an action of ejectment a verdict and judgment for plaintiff will be sustained, where the plaintiff produces evidence to show that he had paid the taxes upon the mountain land in controversy assessed on the seated list for 1891, and that the lands had been assessed on the seated list for more than twenty years prior to that time, while the defendants show that they had bought the lands at a tax sale upon taxes assessed against them on the unseated list for 1891, there being no satisfactory evidence to show how they came to be assessed as unseated lands in that year.

Argued Feb. 13, 1911. Appeal, No. 312, Jan. T., 1910, by defendants, from judgment of C. P. Lycoming Co., Sept. T., 1909, No. 2, on verdict for plaintiff in case of W. A. Dougherty v. William T. Welshans et al. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Ejectment for 430 acres of land in Limestone township. Before HART, P. J.

At the trial it appeared that the lands had been warranted to one Jacob Sailor, and subsequently, on July 2, 1795, granted by the commonwealth by patent to one John Kantner. There was then a break in the chain of the

record title until May 3, 1849, when Margaret Sharp, as administratrix of Anthony Sharp, deceased, conveyed the lands to one Mathias Baier. The lands had been sold under an order of the orphans' court to pay the debts of Anthony Sharp. The deed from the administratrix to Baier contained the recital that the title of John Kantner "by sundry conveyances became vested in Anthony Sharp." The plaintiff claimed under a direct record title from Baier. The defendants claimed under a sale for taxes assessed in 1891.

At the trial the following offer was made:

Counsel for plaintiff offer in evidence deed, Margaret Sharp to Mathias Baier, dated May 3, 1849, for all that certain tract of land situate in Limestone township, bounded and described as follows: "Beginning at a post, thence by land of Jacob Sailor, south sixty-five degrees east, 368 perches to stones; thence by vacant lands north sixty-five degrees east, 200 perches to a pine; thence by land of Thomas Reed and surveyed land, north sixty-five degrees west, 368 perches to a post; thence by Nicholas lands south sixty-five degrees west, 200 perches to the place of beginning, containing 433 and ¾ acres and allowance, being the same tract of land."

Counsel for defendants object to counsel for plaintiff reading the contents of this deed to the court and jury until the deed has been admitted by the court, and request that counsel for plaintiff now state the purpose of offering this deed.

To which counsel for plaintiff reply that this deed is offered for the purpose of showing a conveyance from Margaret Sharp to Mathias Baier for the John Sailor warrant; also for the purpose of showing title in Anthony Sharp, deceased, by the following recitals in said deed: "which said tract of land was patented by the Commonwealth of Pennsylvania by patent dated the 2nd day of July, 1795, and enrolled in Patent Book No. 28, page 396 unto a certain John Kantner and by sundry conveyances became vested in said Anthony Sharp, deceased, and by

virtue of an Order of the Orphans' Court of Lycoming County, sold by public outcry on the 28th of April, 1849, to said Matthias Baier, this sale so made was confirmed by said Court as by reference to said proceeding will fully appear."

Counsel for defendants object to the deed now offered:

1. Because no title to the warrant in question has been properly shown out of the commonwealth.

2. Because the deed offered in evidence is not competent for the purpose for which it is offered.

3. Because the deed purports to be made by an administrator under authority of the orphans' court of Lycoming county, and cannot be introduced in evidence until proof of authority by the orphans' court has first been introduced.

4. Because there is no title shown in Anthony Sharp, the person for whom Margaret Sharp, the grantor, was administrator.

5. Because incompetent and irrelevant.

The Court: Before this deed is admitted plaintiff should show title in Anthony Sharp.

To which suggestion by the court counsel for plaintiff reply that the only way they can show what is intimated by the court is by the recital in the deed; that that is the best evidence they can give and is the strength of plaintiff's title; that plaintiff has been unable to find the title deed and the next best evidence is the recital in the deed and for that purpose plaintiff offers the deed in evidence.

Defendants further object to the admission of this deed because plaintiff does not offer the precedent conveyance from Kantner or Sailor, or any of the intermediate steps, by which title became vested in Anthony Sharp, if it became vested in him at all, but simply offers a deed which says "by virtue of sundry conveyances became vested in Anthony Sharp, deceased," which is a common thing when people have not a good title, and that titles cannot be manufactured by inserting in a deed that title was vested "by virtue of sundry conveyances."

To which objection counsel for plaintiff reply that this is the title upon which plaintiff and his predecessors have relied for years and years, and that the muniments of title precedent have been lost and the only record plaintiff has is the citation in this deed now offered, which was made in 1849.

The Court: In order that there may be no delay in this matter, I will overrule these objections for the present and admit the deed in evidence; to which the defendants except and at their request an exception is noted and bill sealed. [1]

The court charged in part as follows:

[Now we say to you these various conveyances have vested in this plaintiff a sufficient paper title upon which this action of ejectment may be sustained, and that he would be entitled to recover in this action, were it not for the defense set up here showing, or tending to show, that this title, prior to the time that it became vested in William A. Dougherty, was divested by a tax sale.] [4]

Plaintiff presented this point:

4. That if the jury are satisfied from the evidence in this case that the land shown on the seated list to be taxed in the name of John B. Dougherty, David Dougherty, William Kilday and D. and H. Dougherty, is the same land as that taxed in the unseated list in the name of the said John Sailor warrant, then the plaintiff is entitled to recover. *Answer:* This point is affirmed. [5]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2) refusal of binding instructions for defendant; (4, 5) above instructions, quoting them.

*W. C. Kress* and *Seth T. McCormick*, for appellants.— A deed from one who is not shown to have had either right, title or interest in the land, or possession thereof, is not admissible in evidence to show title in the grantee: Bona-

fon v. Peters, 134 Pa. 180; Warner v. Henby, 48 Pa. 187; Crist v. Boust, 26 Pa. Superior Ct. 543.

The recital should not have been considered: Reinboth v. Zerbe Run Imp. Co., 29 Pa. 139; Fox v. Thompson, 31 Pa. 172; Olewine v. Messmore, 128 Pa. 470; McGrew v. Harmon, 164 Pa. 115; Dorff v. Schmunk, 197 Pa. 298; Bright v. Allan, 203 Pa. 386; Lake Winola Assn. v. Mott, 1 Pa. Superior Ct. 304.

We believe that an examination of all of the Pennsylvania cases, in which the subject of the presumption of a grant has been discussed by the courts of last resort, will show, either that the principle stated was not essential to a recovery by the plaintiff, or that, where a recovery was allowed under such circumstances, the defendant was a mere intruder without color of title: Galloway v. Ogle, 2 Binn. 468; Garwood v. Dennis, 4 Binn. 314; Taylor v. Dougherty, 1 W. & S. 324; Kingston v. Lesley, 10 S. & R. 383; Baskin v. Seechrist, 6 Pa. 154; Garrett v. Jackson, 20 Pa. 331; Fox v. Thompson, 31 Pa. 172; Warner v. Henby, 48 Pa. 187; Burke v. Hammond, 76 Pa. 172; Carter v. Tinicum Fishing Co., 77 Pa. 310; Brown v. Day, 78 Pa. 129; Wallace v. Fourth Presbyterian Church, 111 Pa. 164; Townsend v. Boyd, 217 Pa. 386.

*James B. Krause* and *C. LaRue Munson,* for appellee.— A tax sale is void if the taxes were actually paid: Montgomery v. Meredith, 17 Pa. 42; Brown v. Day, 78 Pa. 129.

A naked possession is sufficient to recover in ejectment against one who enters afterwards without title: Shumway v. Phillips, 22 Pa. 151; Hoey v. Furman, 1 Pa. 295; Smith v. Lorillard, 10 Johns. 338.

The case was for the jury: Williams v. Hillegas, 5 Pa. 492; Taylor v. Dougherty, 1 W. & S. 324.

Recitals of title in a deed more than thirty years old, where possession accompanied the deed, are prima facie evidence against persons claiming by title under the grantor previous to such deed: James v. Letzler, 8 W. & S. 192; Olewine v. Messmore, 128 Pa. 470.

The plaintiffs and their predecessors having claimed the land, paid taxes, etc., for so long a time without an adverse claimant, a presumption of title was established: Hastings v. Wagner, 7 W. & S. 215; Brown v. Day, 78 Pa. 129; Carter v. Tinicum Fishing Co., 77 Pa. 310; Fox v. Thompson, 31 Pa. 172.

OPINION BY MR. JUSTICE ELKIN, October 9, 1911:

The question upon which this controversy depends is whether the deed of the administratrix of Anthony Sharp to Mathias Baier was admissible in evidence. No paper title was shown in Anthony Sharp who at the time of his death in 1847 was a resident of Schuylkill county, but his widow as surviving administratrix presented her petition first to the orphans' court of that county and subsequently to the orphans' court of Lycoming county asking leave to sell the real estate of decedent for payment of his debts. This petition recited the necessary jurisdictional facts and described the John Sailor warrant patented to Kantner in 1795 as part of the real estate of which Anthony Sharp died seized. The sale was ordered to be made and pursuant thereto the property was subsequently sold at public outcry to Mathias Baier for $346.46. The sale was confirmed by the court and the deed in question here was executed and delivered in compliance with the terms thereof in 1849. This occurred more than sixty years ago and the appellee holds an unbroken chain of title from that time to the present. The offer of this deed in evidence was objected to upon the ground that no title was shown in Anthony Sharp, and, further, that there was no offer to prove the precedent conveyances, if any, connecting the title of Kantner, the patentee, with that of Sharp, the decedent. The land in question was warranted in the name of John Sailor in 1793 and patented to John Kantner in 1795. The plaintiff at the trial in the court below first offered in evidence the patent to Kantner and then offered the deed from the administratrix of Anthony Sharp to Baier which is the one to which objection is made. There is nothing to

connect the grant to Kantner with the title in Sharp except the record of the proceedings in the orphans' court above referred to and the recital in the deed made pursuant thereto. There is an unbroken chain of title from Mathias Baier in 1849 to W. A. Dougherty, the appellee in the present case. Moreover, the title became vested in Daniel Dougherty, the ancestor of appellee, in 1857, and has remained in the Dougherty family from that time to the present. It was wild uncultivated mountain land but possession such as could be taken of such lands was taken by the Dougherties. Logs were cut, a small clearing made, some fences at one time built, taxes were assessed and paid for a long period of time, certainly extending back to 1870, as shown by the testimony and presumptively for years prior to that time. Daniel B. Dougherty testified that he was familiar with the John Sailor warrant and remembered when his father purchased it in 1857. He helped to make a survey and run certain lines of the tract in the early sixties, a few years after the purchase by his father. They cut some logs from the woodland and raised rye in an old field prior to 1862. These facts show that the elder Dougherty held a deed and claimed title to the land at that time and had taken actual possession soon after his purchase. The possession of the Dougherties was never disputed and no one has claimed any adverse title until appellants set up the tax title upon which they stand. The record is silent as to the Kantner title from 1795 to 1849 when the proceedings in orphans' court and the deed to Mathias Baier recite the facts that by sundry good conveyances it became vested in Anthony Sharp and that he died seized of the same. It was sold under decree of court as the property of Sharp and for the payment of his debts. The highest bidder was awarded the property upon payment of the purchase price and the title thus conveyed has remained unchallenged for more than sixty years by anyone claiming adversely from or through John Kantner. No proof was offered to show that Anthony Sharp died in actual possession of the land, but as we view

the record this was not imperatively required.  The lands were wild and mountainous and at that time no doubt had never been the subject of an actual pedis possessio.  In such cases the rule does not require proof of actual possession: Taylor v. Dougherty, 1 W. & S. 324; Foust v. Ross, 1 W. & S. 501.  As Chief Justice Lewis said in Hole v. Rittenhouse, 25 Pa. 491: "If any principle in the law of Pennsylvania can be regarded as well settled by argument and authority, it is that which affirms that the legal title to uncultivated lands draws to it the possession, and that this possession is to be deemed actual, for all purposes of remedy. . . ."  If the legal title was in Anthony Sharp it passed to Mathias Baier under the sale authorized by the orphans' court for the payment of debts, and the lands being unseated possession would be deemed actual for the purposes of remedy in the holder of the legal title.  But it is said appellee failed to prove legal title in Anthony Sharp, which is true.  The answer to this position is that under the facts disclosed by the orphans' court record, the deed in question here, and other circumstances of the case, the presumption is that Anthony Sharp at the time of his death was seized of the title to this land.  This presumption stands as prima facie evidence of the fact until overcome by countervailing proof which was not attempted.  The claim of title in Anthony Sharp is much strengthened by the proceeding in the orphans' court, the regularity and validity of which have never been questioned.  Of course a decree of court cannot breathe life into a title that never existed, but all presumptions are in favor of judicial proceedings.  These presumptions when not rebutted make out a prima facie claim of title in the person asserting the same, especially when applied to ancient transactions, which have not been questioned for a long period of years.  The claim of title in Anthony Sharp has been spread on record since 1849 when the land in controversy was sold for the payment of his debts.  No one has ever appeared to contest the title so asserted, nor to question the proceeding under which the sale was made.

Under these circumstances the law will presume the facts
to be as averred in the record upon which the judicial pro-
ceeding was founded.  Of course, this is only a presumption
subject to rebuttal by proof of facts sufficient to overcome
it, but nothing of this kind appears in the present case.
We think the deed was properly admitted.

Again, we have concluded after a careful consideration
of the whole record and an exhaustive examination of the
authorities that the doctrine of a presumptive grant ap-
plies to this case.  The principle has been recognized and
sustained by our courts since the early days of the com-
monwealth.  It has been approved in a long line of cases
and the only question for decision here is whether it should
be applied under the facts of the present case.  An ex-
amination of the following cases will show not only the
foundation of the rule but the extent and limitation of its
application: Galloway v. Ogle, 2 Binn. 468; Taylor v.
Dougherty, 1 W. & S. 324; Kingston v. Lesley, 10 S. & R.
383; Hastings v. Wagner, 7 W. & S. 215; Garrett v. Jack-
son, 20 Pa. 331; Fox v. Thompson, 31 Pa. 172; Carter v.
Tinicum Fishing Co., 77 Pa. 310; Brown v. Day, 78 Pa.
129; Wallace v. Presbyterian Church, 111 Pa. 164; Town-
send v. Boyd, 217 Pa. 386.  The contention of appellants
is that the presumption of a grant can only be invoked
against an intruder without color of title.  While it is
true that in many of the cases in which the presumption
of a grant was held to apply the defendants were intruders
without color of title, nothing said or decided by this court
warrants the conclusion that the rule is thus limited in
its application.  No case has been called to our attention
nor have we discovered any after exhaustive examination
that so holds.  The exact question does not seem to have
been decided, but many judicial expressions found in the
decisions in which the rule was discussed clearly indicate
that no such limitation was intended.  As far back as
Kingston v. Lesley, 10 S. & R. 383, Chief Justice TIGHL-
MAN said· "The rational ground for presumption is, when
the conduct of the party out of possession cannot be ac-

counted for, without supposing that the estate has been conveyed to the one who is in possession." In Taylor v. Dougherty, 1 W. & S. 324, above cited, Chief Justice GIBSON in discussing the question, said: "The execution of a deed is presumed from possession in conformity to it for thirty years; and why the entire existence of a deed should not be presumed from acts of ownership for the same period, which are equivalent to possession, it would not be easy to determine." The same chief justice, in Hastings v. Wagner, supra, remarked: "These presumptions conduce to repose; and there is a growing tendency to encourage them not only here but elsewhere." Mr. Justice SERGEANT also observed: "The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. No person ought to be permitted to lie by whilst transactions can be fairly investigated and justly determined until time has involved them in uncertainty and obscurity, and then ask for an inquiry:" Foulk v. Brown, 2 Watts, 209. It was said in Baskin v. Seechrist, 6 Pa. 154, that: "It is true that a defective claim of title may be amended by presuming a conveyance from one shown to have title, where the presumptive grantee has exercised, for a long course of years, such acts of dominion over the lands as can only indicate a claim of beneficial ownership unchallenged by any counterclaim of the supposed grantor." In Warner v. Henby, 48 Pa. 187, Mr. Justice THOMPSON, in discussing presumptive grants, said: "These presumptions, when ripened by time, and the silence of the warrantee, supply the place of a conveyance when there have been continuous acts of ownership on the part of the claimant. That period is not less than twenty-one years." Mr. Justice CLARK in Wallace v. Presbyterian Church, supra, in discussing the necessity of the rule as a security of title, said: "Witnesses will die, papers will be lost or destroyed, and the exact proof of an ancient transaction thereby often becomes exceedingly difficult, sometimes impossible. The rule of law which

authorizes the presumption is therefore founded in neces-
sity and should be applied in all proper cases." In a late
case, Townsend v. Boyd, above cited, our Brother POTTER
expressed the view of this court in the following language:
"After a great lapse of time and a series of circumstances
disclosing the enjoyment of an unchallenged title during
such period, the courts will presume whatever grant may
be necessary to quiet the title." In that case the right to
invoke the presumption against one claiming under color of
title, indeed an ancient outstanding title, was expressly
recognized. We there adopted the view of Chancellor
Kent to the effect that if an outstanding title in a third
party is set up as a defense in an action of ejectment, it
must be a present subsisting one, otherwise it will be pre-
sumed to have been extinguished by a conveyance to the
one who has asserted title to and exercised rights of owner-
ship over the land for a long period of years. There is
nothing said in any of these cases, or in any other case in
which the rule has been discussed, sufficient to warrant
the deduction that the presumption of a grant can only
be invoked against an intruder without color of title. The
presumption depends upon the facts of each particular
case and not upon the kind or character of title set up as
a defense. In the present case the facts all point in one
direction, and not a single fact indicates anything to the
contrary. Anthony Sharp at the time of his death claimed
this land. It was sold for the payment of his debts. Rec-
ord notice was given that the purchaser at that sale took
title from the estate of Sharp who held under claim of title
from Kantner by sundry conveyances. That purchaser
and those holding under him have had the constructive or
actual possession since 1849. The Doughertys have paid
the taxes assessed against it for a period of forty years at
least. They have exercised dominion over it for more than
fifty years. During all these years no one asserted an ad-
verse claim of title under John Kantner, and no one as-
serts such a claim in the present case. There is a break in
the chain of title from Kantner to Anthony Sharp, but

from the time his title passed to Mathias Baier to the present, the successors in title have stood upon this ancient title unchallenged by any adverse claimant. If anyone else ever claimed adverse title under John Kantner, and there is nothing to even remotely indicate that such a claim was ever made, he hauled down his flag and fled the field long ago. The presumptions are all against any such claim and in favor of those asserting the Sharp title under the orphans' court sale in 1849. The elder Dougherty purchased this title in 1857 and the Dougherty family have relied on it ever since. They have been in the actual or constructive possession during all these years. They have exercised dominion over the land to the exclusion of others and have borne their share of the public burdens by the payment of taxes assessed against it. No one else has done any of these things. Surely under such circumstances a conveyance to Anthony Sharp, under whom the Dougherties claim, will be presumed. The facts of this case bring it within the very spirit and purpose of the rule.

But it is contended that the recital in the deed from the administratrix of Anthony Sharp to Mathias Baier was too general in its terms to be evidence of a conveyance from John Kantner, and that the learned trial judge committed error in admitting it. We have already said that the deed was properly admitted in evidence, but did not discuss the effect of the recital. The general rule is that recitals in a deed are evidence against the grantor and all persons claiming under him, but are not evidence against a stranger, or other person claiming under a title derived from the grantor before the deed containing the recital. This rule which applies to recent conveyances has a well-established exception in the case of an ancient deed. Recitals in ancient deeds, where possession accompanies the deed, are prima facie evidence of the facts recited even against third persons. James v. Letzler, 8 W. & S. 192. The rule as applied to ancient deeds generally is not disputed, but it is contended that the recital in the deed in question here is not specific enough to be admitted as evi-

dence of the fact. The recital is that the title of John Kantner "by sundry conveyances became vested in Anthony Sharp." It is argued that to make such recitals competent evidence they must contain the names of the parties and give the dates of the lost deeds, also that there must be proof of the existence and loss of such deeds before offering the deed containing the recital. If such were the rule it would be almost impossible to meet its requirements in offering ancient deeds in evidence. As for instance, in the present case Mathias Baier took title in 1849 and there is perhaps no living person who could be called as a witness to testify that he knew of the existence of prior conveyances, or that they had been destroyed or lost. In many instances such a rule would place an impossible burden upon the holder of an ancient title, and one which might result in doing great injustice. The law only requires the production of the best evidence possible under the circumstances and never demands an impossibility. The rule as to the admission of ancient deeds and papers in evidence is one of necessity and grows out of the recognized difficulty and frequently the impossibility of proving the actual facts connected with old transactions. It is a wholesome rule and should not be frittered away by technical refinements in its application. The position of appellants in this respect loses sight of the real question involved. It was the deed which was offered in evidence to which objection was made. We have already said that the deed was properly admitted as a link in the chain of title. When admitted it was proper to read its contents for the information of the court and jury, and this necessarily included the recital. The recital is only evidence of the facts recited. When the facts are specifically recited, giving names of parties, dates of deeds, and other information in detail, the evidential value of the recital is greater and more conclusive. We do not deem it necessary to put this case on the ground that the general recital in the Mathias Baier deed was sufficient to conclusively show the vesting of the John Kantner title

in Anthony Sharp. It was some evidence of it and taken in connection with all the other facts and circumstances laid the foundation for the presumption of a grant to Anthony Sharp. We think it was proper for this purpose at least, and in the disposition of the present case it is not necessary to go further. But it is argued that it was not offered for this purpose and therefore cannot be so considered. This objection is purely technical and does not go to the merits on the question of the admissibility of the deed containing the recital. While there is force in the argument we do not think it is necessary to reverse the judgment on this narrow and technical ground. The offer was for the purpose of showing a conveyance from the administratrix of Anthony Sharp to Mathias Baier and by the recital to show title in Anthony Sharp. We have already decided that the deed was properly admitted as a link in the chain of title and when admitted it could be used for any evidential purpose. It did show a conveyance to Mathias Baier and this was one purpose of the offer. The recital was some evidence of title in the estate of his grantor and as such could be offered and considered in connection with other facts tending to establish that title. It would be sticking in the bark to hold that the recital, although otherwise admissible, was improperly admitted because the offer did not specifically state that it was to be used in connection with other facts to lay the foundation of a presumptive grant. It was offered as evidence of title in Anthony Sharp, whether by presumptive grant or otherwise was not stated. The recital being part of the contents of an ancient deed it was at least an item of evidence in support of the offer.

The fourth assignment raises a nice question and one not free from difficulty. The instruction complained of was: "Now we say to you these various conveyances have vested in this plaintiff a sufficient paper title upon which this action of ejectment may be sustained, and that he would be entitled to recover in this action, were it not for the defense set up here showing, or tending to show, that

this title, prior to the time that it became vested in William A. Dougherty, was divested by a tax sale." It is argued that this was a binding instruction to the jury in favor of plaintiff upon all questions of evidence in the case and left nothing open except the validity of the tax title held by appellants. In this connection it is not improper to remark that in law and in fact this is the only question involved in real controversy here. More than seventy years ago Chief Justice Gibson, in discussing the effect of evidence in a similar case, said: "On every principle of authority and reason, this was sufficient not only to be left to the jury, but in the absence of conflicting evidence, to command a verdict:" Taylor v. Dougherty, 1 W. & S. 324. To instruct the jury that under the evidence the plaintiff is entitled to recover unless the validity of the tax title set up is established, is a very mild form of "commanding" a verdict. The jury were instructed that the action may be sustained and that the paper title was sufficient to entitle plaintiff to recover. All of which is true when considered in connection with other facts and circumstances of the case. In other parts of the charge the legal status of the title relied on by appellee was more accurately and fully stated. There was no conflicting evidence relating to the title of appellee. Appellants did not undertake to set up an outstanding title in anyone claiming under John Kantner. They relied on their tax deed and contended that appellee had failed to show a good title by reason of the missing link. The learned trial judge thought the evidence was sufficient to account for the missing link and so do we. The jury were so instructed. Under all the facts we have concluded that the fourth assignment does not constitute reversible error.

The fifth assignment relates to the affirmation of the fourth point submitted by counsel for plaintiff at the trial. By affirming this point the jury were instructed that if they found from the evidence the land in dispute was taxed in the name of the Dougherties on the seated list for 1891, and was the same land as that taxed on the unseated list

in the name of the John Sailor warrant, the plaintiff would be entitled to recover. This point standing alone might be confusing and even misleading, but when taken in connection with the whole charge as well as the other points affirmed, we cannot believe the jury were misled by it. It was intended to and did narrowly and sharply define the real question in the case. Appellants relied on a tax title derived from the sale of the land for taxes assessed against the John Sailor warrant on the unseated list for 1891. If this was a valid tax title appellants could hold under it no matter how perfect or imperfect the paper title of appellee might be. Appellants did not claim under John Kantner nor did they set up any adverse outstanding title in conflict with that of appellee. They simply relied on their tax deed. If the tax title was valid the land was theirs; if invalid, it did not belong to them. This was the whole question. In this connection the remarks of Mr. Justice WOODWARD in Fox v. Thompson, 31 Pa. 172, are pertinent: "If he has title, he should have permitted the prima facie case, presented by the plaintiffs, to have been received by the court, and then shown his own right. The question raised upon the plaintiff's title could have been contested with better advantage, after showing his own, if he had any to show, than upon the competency of the evidence." The position of appellee was that the tax title set up by appellants was void because these same lands were taxed on the seated list to the Dougherties in 1891 and the taxes so assessed were paid. If so, no valid title passed under the tax sale. The evidence if believed was ample to sustain such a finding. The Dougherties did pay taxes upon mountain land assessed on the seated list for 1891. These lands had been assessed on the seated list for more than twenty years and why they were also assessed on the unseated list for 1891 does not satisfactorily appear. All these facts were for the jury. It was a question of identifying the lands and the jury were so instructed. This was the real question in the case and it was carefully submitted. All other questions were but

incidental. The jury found in favor of appellee upon ample evidence.

There are some technical errors in this record, but as we view it appellants had a fair trial on the merits of the case and the matters complained of in the assignments of error do not affect the real question in controversy which is the validity of the tax title. On this question the jury found against appellants and this should be an end of the controversy.

Judgment affirmed.