## Case No. 13,477.

### STOKES v. DAWES.

[4 Mason, 268.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1826.

#### ESCHEAT—RES JUDICATA—DEED—RECITALS— STATE'S SEISIN—GRANT.

1. An inquest of office by the attorney general for lands escheating to the government by reason of alienage, is evidence of title in all cases; but is not conclusive evidence against any person. who was not tenant at the time of the inquest, or party or privy thereto. Such person may prove that there are lawful heirs, not aliens, in esse.

[Cited in Montgomery v. Dorion, 7 N. H. 481.]

2. A copy of a deed duly recorded is, after sixty years, admissible in evidence to establish the grant, under which the party claims title to the land in controversy.

[Cited in Deery's Lessee v. Cray, 5 Wall. (72 U. S.) 806; Fulkerson v. Holmes, 117 U. S. 399, 6 Sup. Ct. 780.]

3. Where a marriage is proved, a recital in a deed sixty years old, that the grantor is heir, and sells as such, is prima facie evidence of the fact, if possession of the property has been uniformly held ever since under that deed.

4. Where the commonwealth is seised under an inquest of office of lands, that seisin must be deemed to continue, until the title is lawfully parted with; for the commonwealth cannot be disseised.

[Cited in People v. Clarke, 9 N. Y. 361; Sands v. Lynham, 27 Grat. 297.]

5. A resolve of the legislature, releasing such title to another, may be construed as a grant, if necessary to give it effect.

[Cited in Enfield v. Permit, 8 N. H. 514.]

Writ of entry sur disseisin of the demandant. Plea, nul disseisin.

At the trial the demandant claimed title to the premises as follows: One Benjamin Stokes died seised of the premises in 1756, leaving a daughter, Rebecca Stokes, his heir at law, who died afterwards, in 1765, as the demandant alleged, without any lawful heirs. Benjamin Stokes made a will in 1749, which was admitted to probate in 1757, and gave his estate to his said daughter and appointed William Payne and Daniel Gould his executors. There was a clause in the will, by which a limited control seemed to be given to the executors, as to the time and manner of the daughter's possessing the estate. In 1795 an inquest of office was filed by the attorney general against Thomas Adams and Joshua Bentley, who were in possession of the estate, claiming the land as an escheat to the commonwealth on account of the daughter, Rebecca Stokes, having died without lawful heirs. The fact was directly put in issue by the tenants, and a verdict in the affirmative was found for the commonwealth, upon which judgment was duly obtained, and

1 [Reported by William P. Mason, Esq.]

a writ of seisin duly executed and returned in April, 1796. The tenants, however, had been allowed to remain in possession afterwards by the indulgence of the commonwealth; and it did not appear, that the commonwealth had ever received any rents and profits. The present defendant, Mary Dawes, was a daughter of Joshua Bentley, her mother being a daughter of Payne. She had been in possession for several years. On the 14th of February, 1825, the legislature passed a resolve upon the petition of the demandants as follows, viz.: "Resolved, for reasons set forth in said petition, that the commonwealth remise, release, and forever quit-claim, and do remise. release, and for ever quit-claim to the said William Stokes, &c. all the right, title, and interest, which the said commonwealth have, or may have, in the said several tracts of land, being the same whereof one Rebecca Mountjoy died seised and possessed, and which the said commonwealth held by escheat for want of heirs, as alleged in their said inquests of office, to have and to hold the aforesaid premises to their use and behoof for ever."

The tenant claimed title as follows: A certificate of marriage was produced between Daniel Mountjoy and Rebecca Stokes, in September, 1739. An office copy of a deed was then offered, dated the 20th September, 1765, purporting to be a deed of one Daniel Mountjoy to Daniel Gould and William Payne (the executors of William Stokes), for the consideration of £200, "of all his right and title in and to the real estate of his grandfather Benjamin Stokes, or his mother Rebecca Stokes." The deed was duly acknowledged and recorded in October; 1765.

Blair & Blake, for demandant, objected to the admission of this deed, without some proof that Daniel Mountjoy was the legitimate son of Rebecca. They further objected to the copy of the deed's being read without some proof of the loss of the original.

The tenant then proved, that William Payne (one of the grantees) had taken immediate possession of the estate, and held the same until his death in 1786; that by his will made in 1786, and duly approved, he devised all the residue of his estate (which included the premises) to his wife for life, and after her death to his grandchildren (among whom was the tenant, Mary Dawes); and appointed the said Thomas Adams (who had married one of his daughters, by whom he had children) one of his executors; that the widow, after Payne's death, continued in possession of this estate; and that, after her death, Thomas Adams and Joshua Bentley remained in possession until after the inquest of office.

STORY, Circuit Justice, upon these facts, thought the copy of the deed admissible. If the original were now produced, after such a lapse of time, it would be admitted, without proof of its actual execution, under circumstances like the present. Here, indeed,

the original is not produced; but the non-production may well be accounted for, by loss from time and accident, after sixty years; and as it was recorded immediately after its execution, there seems no reason to conjecture, that there is a fraudulent suppression of it. The possession has gone in conformity to the deed. Then as to the point of legitimacy, the marriage of Rebecca Stokes is proved, and after sixty years it is not too much to say, that a fact of heirship, stated in a deed, under which possession was held without question for thirty years, may well be admitted, as of itself presumptive proof of the fact, liable, of course, to be controlled by other presumptions and evidence.

Evidence was then introduced, on behalf of the demandant, to prove, that there was a general reputation among the friends and in the neighbourhood, that Daniel Mountjoy was an illegitimate child, and that Mary Dawes had admitted the demandant's title. There was also evidence introduced to control the foregoing, on behalf of the tenant.

Blair & Blake, for demandants, contended, that the demandants were, upon these facts, entitled to recover the whole; but if not the whole, the part to which the tenant had not shown any title: 1. Because the commonwealth had a good title and seisin, which passed, by the resolve of 1825, to the demandants, under which they acquired a lawful seisin: 2. That the inquest of office in 1795 was conclusive evidence against all persons, and particularly against the tenant, that Rebecca died without leaving any lawful heirs: and 3. That if not conclusive, still, upon the whole evidence, there was an irresistible presumption of the fact. They cited Bull. N. P. 243; 4 Mass. 282, 301; Co. Litt. 2b; Plow. 229, 484; 3 Rep. 10; 6 Mass. 329; 9 Mass. 125; 1 Mass. 394; 14 Mass. 193, 203; 1 Phil. Ev. 336; 14 Johns. 79; 4 Mass. 282; 8 Cranch, 46; 4 Com. Dig. "Executors," A, 1.

S. D. Parker, for tenant, denied all these positions, and contended, that the resolve, being a mere release of the title of the commonwealth, conveyed no seisin to the demandants. He cited 1 Mass. 219, 483.

STORY, Circuit Justice, in summing up to the jury, said: The inquest of office is undoubtedly evidence in this case of a very high nature; but I do not think it is conclusive evidence. To give it the latter effect, it would be necessary to show, that the tenant was a party or privy to that suit. It is true, that Joshua Bentley, one of the defendants in that case, is her father, but she does not claim this estate under him. On the contrary, if she has any title, it is one derived directly to her by devise from her grandfather, William Payne. Then it is said, that the demandants are, at all events, entitled to recover so much of the estate, as she does not show a title to; and as her title is only to an undivided moiety with the other grandchildren of William Payne, the title of the demandants must prevail, as to all the residue belonging to the other grandchildren. But this argument is not well founded in law. The demandants by their writ admit the defendant to be a good tenant of the freehold for the whole of the demanded premises. The writ admits her seisin; and she, having pleaded the general issue, has consented to be deemed tenant of the whole. See Kelleran v. Brown, 4 Mass. 443. The case might have been different, if there had been a disclaimer. Under these circumstances the demandants must recover by the strength of their own title; and that title is good for the whole, or it is bad for the whole; there being no doubt, that if Rebecca Stokes died without lawful heirs, the escheat of the commonwealth has been perfected. If she left a son, who was her lawful heir, and the deed to William Payne was good to pass the estate, it is wholly immaterial, who are the other tenants claiming under Payne.

Now, what is the demandants' title? They prove a seisin of the commonwealth, under an inquest of office for an escheat of the estate. The commonwealth, being once seised, cannot be disseised. And its seisin must be deemed to continue, until it has lawfully parted with the title. See 4 Mass. 282; [Green v. Liter]. 8 Cranch [12 U. S.] 246; 6 Deane, Abr. p. 71, c. 178, art. 16, § 3. Then, as to the resolve of 14th of February, 1825; it is said, that it only purports to release the right, title, and interest of the commonwealth in and to the premises; and that a mere release is not sufficient to pass a seisin. But it appears to me, that the resolve, though its terms are, as stated, must receive a reasonable interpretation. The intention was to grant the right, title, and interest of the commonwealth to the demandants; and the resolve would be nugatory, if it were to be construed otherwise. I hold, therefore, that it was a sufficient grant to pass the right, title, and interest of the commonwealth, and that, by operation of law, the commonwealth being then seised of the estate, a sufficient seisin passed by the resolve to the demandants to maintain their action. If then their seisin is proved, the plea admits the disseisin, unless the tenant establishes a better title. The case, therefore, resolves itself into a comparison of the titles of the litigating parties. And, indeed, the case must wholly turn upon the point, whether Daniel Mountjoy was a legitimate child of Rebecca Stokes or not; for unless he was legitimate, as no other title is shown in him, the demandants are entitled to a verdict.

The judge then summed up the facts on this point, and so left the cause to the jury. The jury found a verdict for the tenant; which was set aside, and a new trial granted, principally upon some new evidence discovered since the trial.