72 U.S. 795 (____)
5 Wall. 795
DEERY
v.
CRAY.
Supreme Court of United States.

*801 Mr. Brent, for the plaintiff in error.
*802 Mr. Justice MILLER delivered the opinion of the court, and  having stated the facts of the offer of the copy of the deed from the executors of W. Brent, and of the offer of the mass of testimony designed to show that possession had so passed with the deed, and had been held under and in consistency with it for such a length of time as to raise a presumption of the truth of one or both the recitals in it  went on as follows:
Before we proceed to examine the sufficiency of this evidence for the purpose for which it was offered, we shall notice a criticism of defendants' counsel in regard to the matter in the recitals, of which proof can be received. It is said that by the recital of the existence of a will which authorizes *803 the executors of William Brent, Sr., to convey the land, William Brent, Jr., and Samuel Chew, the grantee, and all persons claiming under them, are estopped from denying the existence of such a will, and from claiming any benefit from the fact that William Brent, Jr., was heir-at-law, and conveyed as such heir, as well as executor. The proposition does not seem to us to be well founded. It may be very true that William Brent and the other grantors in that deed were estopped as against Samuel Chew to deny the truth of anything recited in the deed. And if any controversy growing out of that transaction had ever arisen, in which Samuel Chew, or any person claiming under him, was adversary to William Brent, or any person claiming in his right, the person claiming under the latter would have been estopped from denying the existence of such a will as that described in the deed, or that said Brent was heir to William Brent, Sr. But suppose that William Brent, some years after the execution of this deed, had brought an action of ejectment against a person who derived no right under the deed, but who claimed adversely to the title of both Brent and Chew, would William Brent, in that case, have been estopped from claiming as heir of his father by the recital of the will in his deed to Chew? Clearly not; for the simple reason that no person can rely upon estoppel growing out of a transaction to which he was not a party nor a privy, and which in no manner touches his rights. There is no mutuality, which is a requisite of all estoppels. That is precisely the case before us. The plaintiff claims under Brent and his deed. Defendants claim nothing under that deed, and deny all connection with the title it purports to give. They are strangers to it, and have no right to set up its recitals as estoppels.
There is another reason why there can be no such estoppel. It was the manifest intent of all the parties to the deed that it should convey such title as might be conveyed under the will, and if that should be invalid, convey such title as William Brent had as heir-at-law. These purposes did not necessarily defeat each other. There might have been a will, *804 and it might have been doubtful whether it had been executed with the formalities necessary to transmit title to land in Maryland, or to authorize the executors to do so. In such case the purchaser had a right to take, also, for his security, a conveyance from the heir-at-law. If he could do this by a separate instrument, there is no reason why he could not do it in the same instrument which professed to convey by authority of the will. The very nature of the case, therefore, precludes the idea of estoppel; for, to say that a party claiming under that deed is estopped to assert that William Brent inherited the land as heir-at-law, is to deprive him of a right conferred by the deed, and which was one of the essential conditions of its acceptance.
If, then, the testimony offered by plaintiff was sufficient to raise the presumption that William Brent was heir-at-law of the party who died seized, or that such a will existed as that recited in the deed, then that instrument should have been read to the jury.
The evidence offered in support of the deed may be divided into that which is documentary and that which is parol.
It is not necessary that we should go into a minute examination of the effect of this testimony. We are satisfied that it affords a reasonable and fair presumption that every part of Kent Fort Manor has been held under the deed from William Brent and his co-executors to Samuel Chew, from its date in 1785 till the present time. In reference to the north half of the manor, there can be no reasonable doubt of this proposition, for no one is in possession of any part of it who does not hold under Samuel Chew, grandson of the grantee, and son of Samuel Lloyd Chew, to whom the manor was devised by that grantee. It is maintained, however, that in reference to the southern half of the manor, which is proved to have been held under the deed from Philip Barton Key to Arthur Bryan, from the date of that deed in 1798 to the present time, there is a hiatus which can be filled by no presumption. If, however, we recall the statement in Key's deed to Bryan, that the land which he is *805 conveying "is the same land and half-part of Kent Fort Manor of which Mrs. Chew was heretofore seized," we can have no difficulty in presuming that in some way Key had become the owner of Mrs. Chew's title. The lapse of time and the reference to her seizin would be sufficient to authorize a jury to presume a conveyance by Mrs. Chew to Key, or to some one from whom he derived title. This consideration is strengthened by the fact that Key covenants to warrant the title to the land against all persons whomsoever. It is unreasonable to believe that in the very deed in which he makes this covenant he would admit Mrs. Chew's former seizin and point to her title, unless he had in some way become invested with that title, especially as she was still living and could have asserted her right against Key's grantee, if she had not in some manner parted with it.
Is it requiring too much to presume from these facts that one or both the recitals in the rejected deed, and on which its power to convey this land depends, are true? Not a single circumstance is to be found inconsistent with the fact that William Brent, one of the grantees in that deed, was son and heir to William Brent, Sr. Nor is there anything except the failure to find it, inconsistent with the existence of such a will as is recited in that deed. When we consider that William Brent, Sr., died in Virginia; that all the grantees in the deed resided there; that the system of recording and proving wills had not then become so general and so well understood as it has since, and that for eighty years no occasion has arisen for the production of that will, the failure to find it by parties who have no other relations with the Brents than this one transaction of their ancestors, does not argue so forcibly against its existence at that time, as to overthrow the presumption arising from long possession of this manor, held under the supposition of the existence of such will.
That recitals of this kind in an ancient deed may be proved as against persons who are not parties to the deed, and who claim no right under it, is too well settled to admit now of controversy. Such is the doctrine of this court in Carver v. *806 Jackson,[*] and in Crane v. Astor and Morris.[] The only question is, whether the facts justify such a presumption, and we must say that, if they can do so in any case, we do not see how the inference can be resisted in the case before us.
It follows that the Circuit Court erred in refusing to admit the deed offered by plaintiff as set out in the fourth bill of exceptions.
2. In the further progress of the trial some of the defendants offered in evidence a deed from the plaintiff's mother to Samuel A. Chew, her uncle, purporting to convey all her interest in Kent Fort Manor. As plaintiff's efforts, as far as developed, had been to establish a title as heir-at-law of her mother, of course this deed, if admitted, was fatal prima facie to her claim. Her counsel objected to the admission of the deed, and his objection being overruled, he took his sixth bill of exceptions, which we now proceed to examine.
All the objections made to this deed relate to the certificate of acknowledgment. The first two are unimportant. They are that it does not appear that the justices of the peace who took the acknowledgment were sworn into office, or that they took the acknowledgment in the county of which they were justices. We think that it is a presumption of law from the facts stated in the certificate of the justices, and of the clerk of the county court, that both these requirements were complied with.
But it is also strenuously urged that the deed is void because the certificate does not show a compliance with the law of Maryland then in force concerning the privy examination of married women. The act of 1807, which was in force at that time, required this examination to be conducted out of the presence and hearing of the husband, and the point is made that it does not appear from the certificate that Mrs. Beatty, the mother of plaintiff, was examined out of the presence of her husband, with whom she joined in the conveyance. The certificate recites "that the said Elizabeth *807 C. Beatty, wife of Eli Beatty, and Henrietta Schnebly, wife of Henry Schnebly, being by us, justices of the peace as aforesaid, respectively, privately examined apart from, and out of the hearing of their, and each of their husbands, did," &c. Now, although the words "out of the presence" are not used here, we are of opinion that the words which are used show necessarily and conclusively that the examination was had out of the presence of the husband.
In the first place, it was had privately. As the object of the statute was not to provide for strict privacy from all persons, but only privacy from the husband, it is to be supposed that it was in this sense the justices used the word. It is also stated that she was examined apart from her husband. This expression is still stronger, and can mean nothing less than that the husband was not present when she was examined; and, to make it still clearer that this examination, private and apart from her husband, was out of his presence, it is further certified that it was out of his hearing.
Some decisions of the Supreme Court of Maryland have been cited to show that the rule there is a strict one as to the agreement between the certificate and the statute, but none which overturns the doctrine recognized by that court, as it has been by all others, that equivalent words, or words which convey the same meaning, may be used instead of those to be found in the statute. We are satisfied that within this principle the certificate in this case is a compliance with the act of 1807, and that there was no error in admitting the deed to be read to the jury.
It is claimed that, if we shall find this deed to be valid, we must affirm the judgment, although we may find error in the previous rulings of the court, upon the ground that this conveyance shows that plaintiff has no title to the land, and that therefore such error is without prejudice to her rights. We concede that it is a sound principle that no judgment should be reversed in a court of error when the error complained of works no injury to the party against whom the ruling was made. But whenever the application *808 of this rule is sought, it must appear so clear as to be beyond doubt that the error did not and could not have prejudiced the party's rights. In the case before us this is not so clear. The plaintiff, by reason of the error of the court, had never been permitted to introduce the first step in the proof of her case. She had no interest in offering to show anything which might avoid the force of the deed read by defendants. If she could have proved it a forgery it would have done her no good in this suit, because she had failed, under the erroneous ruling of the court, to make out a prima facie case for herself. We cannot assume here that she might not have successfully avoided the effect of that deed, if the court had given her a standing in the case which would have made it avail her to do so.
The judgment of the Circuit Court must therefore be REVERSED, and the case remanded, with directions to award
A NEW TRIAL.
NOTES
[*] 4 Peters, 1.
[] 6 Peters, 598. See also Raymond v. Dennis, 4 Binney, 314; Stokes v. Daws, 4 Mason, 248.