G., H. & S. A. R'Y CO. v. FRANCIS L. STEALEY ET AL.

(Case No. 5822.)

1 EVIDENCE—ANCIENT INSTRUMENT—CERTIFIED COPY—When an original ancient instrument is lost, a certified copy may be introduced in evidence upon the same proof that would make the original admissible, if it could be produced. (Holmes *v.* Coryell, 58 Tex., 687.)

2 SAME—GENUINENESS OF INSTRUMENT—See opinion for evidence sufficient to entitle a party to introduce in evidence a copy of a deed, and to establish the genuineness of the instrument.

APPEAL from Bexar.    Tried below before the Hon. G. H. Noonan.

On March 27, 1885, appellees filed their petition in the district court
of Uvalde county, alleging that they were seized in fee and were the
legal and equitable owners of one-third of a league of land in Uvalde
county, describing the same by metes and bounds, patented to George
W. Stramler, and located by virtue of headright certificate No. 186,
issued by the board of land commissioners of Montgomery county,
Texas, February 2, 1838, to George W. Stramler; also alleging that
appellant had ejected them from the land, and withheld the possession
to their damage, etc., and prayed judgment for the land, etc.

On September 26, 1885, appellant filed its answer in the Uvalde
district court, denying that the purported deed from G. W. Stramler
to George Stealey, of July 4, 1846, under which appellees claim title to
the land in question, a certified copy only of which deed had been
filed in the suit, was signed, executed, or the act of George W. Stram-
bler, to whom the land in question had been granted by the state of
Texas; setting up the plea of not guilty, and claiming title to the land
sued for, and praying a decree therefor, etc.

To appellant's answer was attached the affidavit of its agent that
the original deed, under which appellees claimed title, describing the
same, was not signed or executed by George W. Strambler, to whom
the land was granted, and that affiant believed the deed was forged,
and that he could not procure the original.    By agreement in writing,
filed September 26, 1885, the venue of the suit was changed to the
district court of Bexar county.

The case was tried without a jury, and judgment rendered in favor
of appellees for the land sued for.

Mary Ore testified:    That George W. Strambler was her uncle; that
she only knew he had lived in Texas by letters; that he resided in
Tennessee after he was grown; that he lived in Monterey county, Cali-
fornia, about six months, where she knew him; that he was her
father's brother; that she never heard anything of his whereabouts,
after he left Chinese camp, in 1854, until she heard of his death, in
1856, from Mr. Beebe, who informed her that he died at his house, in
the winter of 1854; that her father was forty-five years old in 1845, and
that he told her that her uncle, Geo. W. Strambler, was ten years older
than he was.

W. D. Anderson, testified:    That George W. Strambler was his step-
father, and that he (Anderson) was fifty-seven years old, and had lived
in Texas since 1834; the last he heard of Geo. W. Strambler was in
1846.

Rufus Grimes, testified:    That he had lived in what is now Grimes

county, this state, fifty-nine years; that he knew one Geo. W. Strambler personally; that he first met him in what is now Grimes county, Texas, then Montgomery county, in the year 1839; he knew him intimately from then until 1846. In the year 1855 or 1856, he was told by David Anderson, his step-son, that Strambler went to California; he had not seen him since the year 1846, when he left Grimes county to move to Robertson county.

*Waelder & Upson,* for appellant, cited: Stroud *v.* Springfield, 28 Tex., 649; Holmes *v.* Coryell, 58 Tex., 680.

*Carleton & Morris,* for appellees, cited; Williams *v.* Conger, 49 Tex., 582; Holmes *v.* Coryell, 58 Tex., 680; Hollis *v.* Dashiell, 52 Tex., 187; Waters *v.* Spofford, 58 Tex., 123.

ROBERTSON, ASSOCIATE JUSTICE.—This was an action of trespass to try title to one-third of a league of land in Uvalde county by the heirs of George Stealey, deceased, against the Galveston, Harrisburg & San Antonio Railway Company. The land was patented on March 28, 1854, to Geo. W. Stramler, and the plaintiffs claimed to own it by a deed made by Geo. W. Stramler to George Stealey on July 4, 1846. The plaintiffs were admitted to be the heirs at law of Stealey, and they were entitled to recover the land, and the judgment below in their favor should be affirmed, if the deed of July 4, 1846, was made by the patentee. The genuineness of this deed was the matter in controversy.

The original paper was lost, but it had been recorded on December 13, 1853, in the registry of Bexar county, and a certified copy was used upon the trial. At the time of trial the deed was over thirty years old. It has been held by this court that when the original ancient instrument is lost, a certified copy may be introduced upon the same proof that would have made the original admissible, if it could be produced. Holmes *v.* Coryell, 58 Tex., 687, 688.

There was no error in permitting the certified copy to be used in the place of the original, on proof of the loss of the original. There is no affidavit of loss in the record; but the parties have corrected the transcript in this particular by an agreement on file to the effect that the statutory affidavit was made. No point is made upon the sufficiency of such an affidavit to warrant the introduction of secondary evidence of the contents of an instrument, excluded by an affidavit of forgery from the benefit of the provisions of the statute respecting the introduction of registered papers. Any question arising from the fact

that a copy, and not the original, was used and admitted, may, therefore, be eliminated from the further consideration of the case. The paper was tested by two witnesses, and was proved by one of them for registration before a notary public of Grimes county as early as August 28, 1846. This authentication, and the registry of the instrument in 1853 are almost conclusive evidences of the antiquity of the paper, and the same circumstances have a bearing upon the issue as to its genuineness.

The land in controversy was surveyed by virtue of the Stramler certificate in 1849, and in 1854 P. DeCordova had in his possession, as a sub-agent of Stealey, the original deed from Stramler to Stealey, and he sent it for record to Bexar county. He also paid the land office fees and obtained for Stealey the patent to the land. From this evidence it is fairly inferable that Stealey had possession of the certificate under his deed from Stramler as early as 1849, and that he caused it to be located, and the land to be surveyed and patented, in the open assertion of his title under the deed from Stramler. His deed was recorded after the survey had fixed the proper place of registration, and before the date of the patent. The custody of the deed being sufficiently accounted for in the affidavit of its loss, the proof of the facts above recited would entitle the plaintiffs to introduce in evidence the copy, and would also be sufficient, in the absence of any countervailing evidence, to establish the genuineness of the paper.

But the grantee of the certificate and the patentee of the land had a "b" in his name not found in the signature of Stealey's vendor. Unless Stealey's vendor was the patentee of the land, though the deed was fully proved, the plaintiffs fail to establish any title. It is difficult to pronounce Strambler and Stramler so as to make any noticeable distinction in the sounds. But if the pronunciations were identical, the question would remain was Stealey's vendor the man who owned the certificate? This is a question of fact, raised by the difference of the names, upon which their similarity is pertinent and important, but not conclusive evidence.

The court below determined that Stramler, the vendor of Stealey, was Strambler, the grantee of the certificate, and if there was legitimate testimony sufficient to sustain this conclusion, the judgment will not be disturbed, even though improper evidence bearing on the point was erroneously admitted. The circumstances bearing upon this point are neither numerous nor very strong. The certificate was granted to Strambler by the board of land commissioners for Montgomery county, on the proof that the grantee had arrived in the country on June 1, 1836. There was proof that a man of that name

lived in Montgomery county in 1839, and that he moved away in 1846. Walker county was cut out of the territory of Montgomery, April 6, 1846, and the deed to Stealey dated July 4, 1846, purports to have been made in the new county, and recites that the grantor, spelling his name in the body of the deed with a "b," is "of said county" of Walker. This tends to identify Stealey's vendor as the grantee of the certificate.

With the exception of the deed made to Fry in 1882, there was no evidence that the grantee of the certificate ever asserted any right to it after the date of Stealey's deed. There was no proof of the genuineness of the deed to Fry. If the grantee of the certificate was the Strambler that lived in Montgomery county, it is highly probable that he was dead before 1882. There is no doubt that Geo. W. Strambler, who was the step-father of W. D. Anderson, was the Geo. W. Stramler testified about by Grimes, and he was also the uncle of Mrs. Ore. He was the grantee of the certificate. His step-son, Anderson, spells the grantee's name with a "b," his niece, who bore the same surname, spelled it without the "b."

This testimony was sufficient to sustain the belief that the grantee of the certificate spelled his name without a "b," and that Stealey's vendor and the grantee of the certificate were one and the same person. Independent of what Mrs. Ore heard from the Beebe's, there was ample evidence to support the conclusion that Mrs. Ore's uncle, Anderson's step-father, and Grimes' acquaintance, was dead long before 1882. He was never heard of alive by any of these parties after 1855 or 1856. R. S., Art. 3221.

If the answer of Mrs. Ore to the final interrogatory was irrelevant, it did no harm. If it was not responsive to the question, it was too late to make the point in the trial of the case.

The judgment below is affirmed.

                                                      AFFIRMED.

[Opinion delivered June 22, 1886.]