PHOEBE FIELDER *et al. v.* GIDEON PEMBERTON *et al.*

(*Knoxville.*    September Term, 1916.)

1. **EVIDENCE. Documentary evidence.    Ancient deed.  Admissibility.**

While recitals in a recent deed are not evidence, except as between parties to it, recitals in a deed, which had been recorded more than thirty years, and was therefore an ancient deed, that the grantors were heirs of the then record owner of the land conveyed, as heirship and family can be proved by hearsay evidence, were admissible as *prima facie* evidence of the facts recorded against strangers to the title, especially as the recitals were further corroborated by the fact that the grantee and his successor in title paid the taxes on the land and for thirty years exercised such control and public acts of ownership that it was generally known  by the name of said successor in title. (*Post, pp.* 447-457.)

Cases cited  and approved: Stokes v. Dawes, 4 Mason, 268; Deery v. Cray, 5 Wall., 795; Dougherty v. Weishans, 232 Pa., 121; Jackson v. Gunton, 26 Pa., Super. Ct., 203; Bell v. Barron, 14 Vt., 307; Wilson v. Braden, 56 W. Va., 372; Webb v. Ritter, 60. W. Va., 193; Schermerhorn v. Negus, 2 Hill. (N. Y.), 335; Little v. Palister, 4 Greenl., 209; Fulkerson v. Holmes, 117 U. S., 389; Williams v. Conger, 125 U. S., 396; Railroad v. Stealey, 66 Tex., 468; Hodge v. Palms, 117 Fed., 396; Bowser v. Cravener, 56 Pa., 132; Jackson v. Willson, 9 Johns., 92; Jackson v. Browner, 18 Johns., 37; Jackson v. King, 5 Cow. (N. Y.), 237; Davis v. Wood, 1 Wheat., 6; Deery v. Cray, 5 Wall., 795; Carver v. Jackson, 4 Pet., 1; Crane v. Astor, 6 Pet., 598; Garwood v. Dennis, 4 Bin., 314; Stokes v. Dawes, 4 Mason, 268; Jackson v. Cooley, 8 Johns., 128; Rollins v. Railroad, 73 N. J. L., 64; Wilson v. Braden, 56 W. Va., 372; Webb v. Ritter, 60 W. Va., 193.

Fielder v. Pemberton.

Cases cited and distingushed: Little v. Palister, 4 Greenl. (Me.), 209; Fulkerson v. Holmes, 117 U. S., 389; Williams v. Conger, 125 U. S., 397; Wilcox v. Blackwell, 99 Tenn., 352.

2. **EVIDENCE. Documentary evidence. Ancient deed. Copy. Admissibility.**

A certified copy of an ancient deed, which had been on record for more than thirty years, without the slightest suspicion or question, was admissible, and had the same probative value as proof of recitals as the original would have had if produced. (*Post*, *pp*. 457-461.)

Cases cited and approved: Applegate v. Lexington, etc., Mining Co., 117 U. S., 263; Railroad v. Stealey, 66 Tex., 468; Hodge v. Palms, 117 Fed., 396.

Cases cited and distinguished: Byrd v. Phillips, 120 Tenn., 14; Woods v. Bonner, 89 Tenn., 418.

3. **DEEDS. Requisites. Description of property. Designation by entry number.**

An ancient deed, referring to land by its entry number, in accordance with the custom at the time of its execution to refer to the entry and grant numbers in describing the land conveyed, was a sufficient description of the land conveyed, as the clear intention of the parties should be made effective, when the court can accomplish it by recognizing the legal and actual connection effected between the entry and grant by the issuance of the latter upon the former. (*Post*, *p*. 462.)

Case cited and distinguished: Lieberman v. Clark, 114 Tenn., 141.

4. **WILLS. Certified copy of foreign will. Admissibility.**

Under Shannon's Code, sec. 3914, providing that wills executed in other States, etc., shall be proved according to the laws of this State, and certified in the manner prescribed by Act Cong. May 26, 1790, chapter 11, 1 Stat. 122 (U. S. Comp. St. 1913, sec. 1519), and section 3915, providing that a copy of a will so certified shall be registered in the county where the land lies, and a copy from the books of the register, duly certified, shlal be evidence, a certified copy of a foreign will of one of plaintiff's predecessors in title, which was probated by the proper officer

Fielder v. Pemberton.

in the foreign State, and a duly certified copy of which, with
the certificate of probate, was recorded in Tennessee, was ad-
missible.   (*Post, p.* 463.)

Code cited and construed: Secs. 3914, 3915 (S.).

5.  WILLS.  Foreign will.  Documentary evidence.

Under Shannon's Code, sec. 3914, providing that a foreign will
shall be proved according to the laws of this State, and section
3904, providing that a will not contested may be proved by one
of the subscribing witnesses, a certified copy of a foreign will,
proved by only one witness, was admissible.  (*Post, p.* 463.)

6.  WILLS.  Certified copy of foreign will.  Admissibility.

A certified copy of a foreign will, setting forth the entire will
*verbatim*, the affidavit of subscribing witness, oath and qualifi-
cation of executor, and certificate of surrogate that above con-
stituted the will and probate thereof, upon which letters testa-
mentary issued to the executor, sufficiently showed the probate
of the will.  (*Post, pp.* 463-465.)

Cases cited and approved:  McGuire v. Hay, 25 Tenn., 422;  Mosely
v. Wingo, 75 Tenn., 147.

Case cited and distinguished:  Donegan v. Taylor, 25 Tenn., 504.

FROM SCOTT.

Appeal from the Chancery Court of Scott County.
—Hugh G. Kyle, Chancellor.

York & Pemberton and Fowler & Fowler, for
appellants.

H. M. Carr, for appellees.

MR. EVANS, Special Judge, delivered the opinion of the Court.

This was an ejectment bill filed in the chancery court of Scott county to recover about five hundred acres of land. The land in controversy is covered by two grants issued to Thomas B. Eastland, to wit, grant No. 21865, dated June 29, 1838, issued on Morgan county entry 1927 and grant No. 21840, dated June 28, 1838, issued on Morgan county entry 1931. The dividing line between these two grants runs through the land in dispute. The same land is also covered by grant No. 22342, dated December 31, 1838, issued to Julian F. Scott, on Morgan county entry 1797, which is a special entry and dated November 19, 1835.

The complainants claim to have acquired both the Eastland and the Scott chains of title, and to have deraigned through each a perfect title from the State of Tennessee. The defendants insist that the Julian F. Scott grant is superior to the Eastland, since it was based upon a special entry of an earlier date than the Eastland grants or entries, and their principal contention is that complainants have not shown a perfect chain of title through the Scott grant. They also contend, however, that complainants have not legally proved a perfect chain of title under the Eastland grants.

In order to get a proper view of the legal questions involved, it will be necessary to state briefly complainants' connection with the land as shown by the record.

Complainants are the heirs at law of John W. Fielder, to whom a deed to the land was executed by William S. Yard, executor of George F. Brown, dated May 2, 1883. This deed was under the Julian F. Scott chain of title. Said John W. Fielder also acquired a deed, under the Eastland chain of title, executed by the Board of Aid to Land Ownership, Limited, and others, dated January 31, 1887.

It appears from the record that J. W. Fielder was a resident of New Jersey, and that he looked after the land principally through his agents in Scott county, though he made some visits to the land personally. The complainants, his heirs, are also non-residents of Tennessee. The witness John Molyneux testified that in April, 1884, Mr. Fielder stopped at his house, near the land in controversy, soon after he acquired his deed through the Scott chain of title, and made arrangements with him to look after the land, which he did until Mr. Fielder's death in 1901. Shortly after that date Mr. Fielder's son, John W. Fielder, Jr., made a trip to Scott county, and made an agreement with Molyneux to continue to look after the property. This witness also testified that about a year after the visit of the younger Fielder, he made an agreement with one Tom Raines to fence in several acres of the land to be held by him for complainants, and to use and cultivate the same, that this was done, and that said possession had been maintained by Raines and those under him ever since that time, a period of ten years or more prior to the

filing of the bill. Raines corroborated this testimony, as did a number of other witnesses, though the testimony on this point, as a whole, is conflicting and somewhat unsatisfactory. It is clear that for several years before the filing of the bill Raines had held possession for complainants of a portion of this land, under inclosure, but just how long this possession had been maintained was a matter of great dispute. Complainants also claimed to have held possession of portions of the land under one Sexton and one Russell, but the record is not very clear about these possessions.

The record further shows that John Molyneux was succeeded by W. T. Walton as agent for the Fielder heirs, having been made such by a Mr. Lee, of New York, who came to Scott County as attorney for these heirs.

From the time when John W. Fielder acquired his deed under the Scott chain of title in 1883 up to the filing of the bill, a period of over thirty years, the land has been known in Scott county as the Fielder land. The witnesses for the defendants, as well as those for the complainants, say that the land has always been spoken of as the Fielder lands. Fielder paid the taxes, and a number of the tax receipts are exhibited in the record. The land was sold for taxes once or twice, but was redeemed by Fielder each time. Several of the witnesses state that Tom Raines and those under him cut timber or wood on the land under authority of Fielder or his agent in

charge. It is also stated by some of the witnesses that one A. C. Ellis, who was an agent of Fielder, cut timber on the land at different times. It seems that the defendants lived and were reared near the land in controversy, and knew it was referred to by people in the vicinity as the Fielder land.

Up to September, 1913, no one had attempted to interfere with the possession or control which Fielder and his agents had exercised over the land, and no one had attempted to take possession of any part of it. No one had, so far as the record shows, for about thirty years, paid taxes on the land except the Fielders.

Under date of September 3, 1913, one Mike Stephens executed to defendants a deed to the land in controversy, and on July 9, 1914, Catherine Miller, the mother of one of the defendants, executed to them a deed to the same land. These deeds were duly recorded, and thereupon defendants took possession of certain portions of the land, and made several small inclosures thereon. The deeds just mentioned were independent of the title claimed by complainants through either the Eastland or Scott grants.

This bill was filed February 8, 1915. At the hearing in the court below, the chancellor entered a decree in favor of the complainants, holding that they had deraigned a perfect title to the land from the State, and canceled the deeds held by defendants as clouds upon complainants' title. From this decree defendants have appealed to this court and assigned errors.

We will first notice the errors assigned with reference to complainants' title under the Julian F. Scott grant. That chain comprised the following instruments, which were introduced in evidence:

(1) Grant from State of Tennessee to Julian F. Scott;

(2) Deed from Julian F. Scott to James S. Duncan, dated November 24, 1854;

(3) Deed from Craven Duncan and others to George F. Brown, reciting, in substance, that the grantors therein were the sole heirs at law of James S. Duncan, deceased, dated June 30, 1880, and recorded September 28, 1880;

(4) Will of George F. Brown, probated April 26, 1881, and recorded in Scott county, May 11, 1881;

(5) Deed from George F. Brown's executor, William S. Yard, to John W. Fielder, dated May 2, 1883, and recorded July 24, 1883.

When the third link in this chain of title, to wit, the deed from Craven Duncan and others to George F. Brown, was offered in evidence, defendants objected thereto, and the chancellor admitted it over their objection. This action of the chancellor in declining to exclude the deed is made the basis of the first assignment of error. The grounds of objection are that the recitals of heirship contained in that deed were not evidence of the facts recited, and that, in the absence of those recitals, there was no evidence that the grantors in said deed ever had any title to the land, or ever acquired any right to convey it.

The reply of complainants to this objection is that the deed is more than thirty years old, had been recorded more than thirty years, and is therefore in law an ancient deed, and that, while recitals in a recent deed are not evidence except as between the parties to it and their privies in title, yet in case of an ancient deed, its recitals with respect to heirship or pedigree are *prima-facie* evidence of the facts recited as against any one, even as against strangers to that particular chain of title. Thus we have presented a question upon which the courts that have considered it have differed to some extent in their conclusions, and we have been referred to no case in Tennessee directly deciding it. Many well-considered cases hold that recitals in a deed to heirship, pedigree, and a family history are a form of hearsay evidence, and that such recitals in an ancient deed constitute an exception to the hearsay rule, and are *prima-facie* evidence of the facts recited. In Warvelle on Ejectment, sec. 374, it is said:

"The several stages by which one person connects himself with an ancestor, or through which he establishes the fact of relationship, is called 'pedigree.' We may therefore define pedigree as the history of family descent. The links of a chain of pedigree are all substantive facts which must be established by proper proof which must be by proper proof to enable an heir to assert a valid claim to an ancestral estate. But, owing the the difficulty of producing living witnesses to prove remote events,

questions of pedigree are often made an exception to the general rule of evidence which excludes hearsay, and, while the cardinal rule that the best evidence of which the case in its nature is susceptible must always be produced still holds good, direct evidence of the facts is not always required. Family history is transmitted in various ways by both oral and written declarations; and, unless proved by hearsay, it cannot, in many instances, be proved at all. For these reasons a liberal course is always pursued, and much that is pure hearsay will be received to prove family relationship and to establish the facts of marriages, births, and deaths, as well as other matters necessarily resulting from those events.''

And in the same section the author further says:

''Recitals in an ancient deed have been permitted to be given as against persons who are not parties to it and who do not claim under it. Entries in a family Bible or other records of family history are generally received, particularly when shown to have been made by a deceased relative, and, when necessary, recourse may be had to tombstones and other funeral monuments. In the latter case the admission of an inscription is made to rest on the presumption that it was placed on the stone by some member of the family having knowledge of the fact stated, as well as upon the further presumption that it would not be permitted to remain if erroneous.''

The weight of authority is that the recital of heirship or pedigree in an ancient deed, where no sus-

picious circumstances are found, and especially where
corroboration appears by the payment of taxes, acts
of control, ownership, or possession of the land, or
even as in some cases by similarity of family name
as shown in the deed itself, such recital is admissible
in evidence against all persons, including strangers
to that title. *Stokes* v. *Dawes,* 4 Mason, 268, 23 Fed.
Cas., No. 13, 477; *Deery* v. *Cray,* 5 Wall. 795, 18
L. Ed., 653; *Dougherty* v. *Welshans,* 233 Pa., 121,
81 Atl., 997; *Jackson* v. *Gunton,* 26 Pa. Super. Ct.,
203; *Bell* v. *Barron,* 14 Vt., 307; *Wilson* v. *Braden,*
56 W. Va., 372, 49 S. E., 409, 107 Am. St. Rep., 927;
*Webb* v. *Ritter,* 60 W. Va., 193, 54 S. E., 484; *Scher-
merhorn* v. *Negus,* 2 Hill (N. Y.), 335; *Little* v. *Pal-
ister,* 4 Greenl. (Me.), 209; *Fulkerson* v. *Holmes,* 117
U. S., 389, 6 Sup. Ct., 780, 29 L. Ed., 915; *Williams*
v. *Conger,* 125 U. S., 396, 8 Sup. Ct., 933, 31 L. Ed.,
778; *Railroad* v. *Stealey,* 66 Tex., 468, 1 S. W., 186;
*Hodge* v. *Palms,* 117 Fed., 396, 54 C. C. A., 570.

In *Little* v. *Palister,* 4 Greenl. (Me.) 209, it is said:

"It must be admitted by all that in modern deeds,
recitals by the grantor as to his own pedigree, or the
derivation of his title, or the existence of it, cannot,
of themselves, be considered in a court of law as
proofs of the facts recited, or a ground of presump-
tion for a jury. A man must not be permitted in this
manner to make evidence for himself. But after a
long series of years, as in the present case, where no
other persons appear ever to have claimed the land
in question, as heirs of the original proprietor, and

thus denied or rendered improbable the truth of the recital, and where the defendant has offered no proof tending to destroy or weaken the presumption, in such cases a jury may be permitted to presume the pedigree as stated in deeds of conveyance, unless facts control the presumption.''

That case was approved in *Bowser* v. *Cravener*, 56 Pa. 132, which was followed in *Carter* v. *Tinicum Fishing Co.*, 77 Pa., 310.

In the case of *Fulkerson* v. *Holmes*, 117 U. S., 389, 6 Sup. Ct., 780, 29 L. Ed., 915, the supreme court of the United States, with reference to recitals of heirship in an ancient deed, said:

''The question is therefore fairly presented, whether the recitals made in the deed of Samuel C. Young to John Holmes, to the effect that Samuel Young, the patentee, had died intestate, leaving one child only, namely, the said Samuel C. Young, the grantor, were admissible in evidence against the defendants, who did not claim title under the deed.

''The fact to be established is one of pedigree. The proof to show pedigree forms a well-settled exception to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity; for, as in inquiries respecting relationship or descent, facts must often be proved which occurred many years before the trial, and were known to but few persons, it is obvious that the strict enforcement in such cases of the rules against hearsay evidence would frequently occasion a failure of justice. Tay-

lor, Evidence, sec. 635. Traditional evidence is therefor admissible. *Jackson* v. *Willson,* 9 Johns. [N. Y.], 92; *Jackson* v. *Browner,* 18 Johns. [N. Y.], 37; *Jackson* v. *King,* 5 Cow. [N. Y.], 237, [15 Am. Dec., 468]; *Davis* v. *Wood,* 1 Wheat., 6, 4 L. Ed., 22.''

The court in that case further said:

''Another circumstance of weight is that Samuel C. Young, having assumed, as the son and sole heir of Samuel Young, to convey the landed estate of the latter, and his grantees having for more than sixty years claimed title under his conveyance, the right of Samuel C. Young to make the conveyance has never, so far as appears, been questioned or challenged by any other person claiming under Samuel Young.

''After a lapse of sixty-one years we think these circumstances were sufficient to prove that Samuel C. Young was of the family of Samuel Young, and that the declaration of the former, deliberately made in an ancient writing, signed, sealed, witnessed, acknowledged, and recorded, to the effect that the declarant was the only child and heir of Samuel Young, and that the latter was dead, was of right admitted in evidence, as tending to prove the facts so recited. This conclusion is sustained by the case of *Deery* v. *Cray,* 5 Wall., 795, 18 L. Ed., 653, which is directly in point. See, also, *Carver* v. *Jackson,* 4 Pet., 1, 7 L. Ed., 761; *Crane* v. *Astor,* 6 Pet., 598, 8 L. Ed., 514; *Garwood* v. *Dennis,* 4 Bin. [Pa.], 314; *Stokes* v. *Dawes,* 4 Mason, 268 [Fed. Cas., No. 13,477];

*Jackson* v. *Cooley*, 8 Johns. [N. Y.], 128. In view, therefore, of the circumstances of the case, there was no error in the refusal of the court to instruct the jury that said recital was not evidence against the defendants.''

In *Williams* v. *Conger*, 125 U. S., 397, 8 Sup. Ct., 933, 31 L. Ed., 778, the supreme court of the United States again had before it an ancient deed or power of attorney, and admitted a recital therein to show that one Laguerenne was a citizen of Mexico. The court said:

''A certified copy of this power of attorney, certified by Ferreira, and authenticated in the same manner as the deed to Laguerenne, was the copy offered in evidence by the defendants, the power being dated January 10, 1837, and its protocol being among the archives of the deceased notary, Francisco de Madriago. This power of attorney authorized said Priolland to sell and dispose of all and any real estate belonging to Laguerenne wherever situated.

''It is unnecessary to examine in detail the reasons assigned by the plaintiff for objecting to the admission of these papers in evidence. We think that they were properly and sufficiently authenticated, and that the judge committed no error in admitting them.

''The only other exception related to the citizenship of Laguerenne. The plaintiff alleged that it was not shown that he was entitled to convey land in Texas in May, 1837, but that he was disabled to do so by reason of his being a citizen of France, and an

alien to the government of Texas. The only direct statement as to his citizenship is that contained in the said power of attorney which he executed, and which begins as follows: 'In the city of Mexico, on the 10th day of January, 1837, before me (Madriago), a notary public, and witnesses, personally appeared Don Guillermo Laguerenne, a citizen, and of the commerce of this place, in whom I have faith and know,' etc. There is no testimony in the case sufficient to overthrow the presumption arising from this recital. Hammekin says that he does not recollect whether he was an American or a Frenchman; that in May, 1836, he was established as a merchant in the city of Mexico; that he had a brother in Philadelphia much older than himself, who was a merchant in that city for many years. This is all the evidence on the subject. It must be received, therefore, that he was a citizen of Mexico."

Other cases to the same effect are: *Rollins* v. *Railroad,* 73 N. J. Law, 64, 62 Atl., 929, where a recital that "she being the issue and heir at law of G. A." was admitted; *Wilson* v. *Braden,* 56 W. Va., 372, 49 S. E., 409, 107 Am. St. Rep., 927, where recitals as to the widow and heir were admitted; *Webb* v. *Ritter,* 60 W. Va., 193, 54 S. E., 484, where recitals of heirship in a deed about sixty years old were admitted.

Without going into further citation of authorities we are of opinion that the recitals of heirship or pedigree in the ancient deed here under consideration

Fielder v. Pemberton.

are, upon the facts of this record, *prima-facie* evidence of the facts recited.

Nor does this rule work any hardship upon either of the parties to the suit wherein the title to land is involved; on the contrary, it is a reasonable and just rule. When a man dies, the title to his land is vested in his heirs at law, who may be residents of a different State from that in which the land lies, and who, when they convey it, simply recite such heirship in the deed. The facts at that time are susceptible of proof or confirmation by the grantee, and he may satisfy himself, but after thirty years or fifty years, or more, there may be no means of finding witnesses in perhaps a distant State to prove the heirship recited in such an ancient deed. It is only reasonable to hold that such recital is admissible as *prima-facie* evidence, where nothing appears in the record to cast suspicion upon it, but where the inferences to be made from the record and from the deed itself are corroborative of the truth of the recital. In the present case the very names of the parties who signed the deed are corroborative of the recital that they were heirs at law of James S. Duncan, and the county court clerk who took their acknowledgment certified that he was personally acquainted with them. The deed recited the grantors as follows:

"Craven Duncan and wife Parthenia, Burton M. Duncan and Vertina his wife, Russel S. Davis wife Mary formerly Duncan, Henry C. Dawn and wife

Lydia formerly Lydia Duncan, and Jane Elizabeth Maroney . . . being the sole heirs at law of James S. Duncan.''

There was further corroboration of these recitals in the fact that the grantee and his successor in title, J. W. Fielder, paid the taxes on the land, and for a period of thirty years exercised such control and such public acts of ownership over the land that it was generally known as the Fielder land.

It is urged by learned counsel for appellants that this holding is in conflict with the case of *Swainson* v. *Scott,* 111 Tenn., 140, 76 S. W., 909. But we do not think so. The recital involved in that case was not one of heirship or family history, but of record title to land. As above pointed out heirship and family history may be proved by hearsay evidence, and are embraced within the exception to the hearsay rule, while deeds or grants are links in the record chain of title and cannot be proved by hearsay. In *Swainson* v. *Scott,* complainants in ejectment had failed to prove a grant from the State of Tennessee, and, upon this point being urged in defense of their action, complainants relied upon certain recitals in deeds constituting links in their chain of title, wherein a grant was referred to as having been issued by the State to one Richard Dunlap of date March 5, 1832, and it was contended that this recital was sufficient to prove the grant on account of the fact that said deeds containing this recital were ancient deeds. The court said:

"It is clear that the mere recitals in said deed are not competent to establish the existence of the grant against the defendant."

It further appears that the recital in that case was subject to some suspicion, because the court said:

"The court of chancery appeals does not find that any one had ever seen the original grant for this land, or a copy of the same on the books of the register's office of the Hiwassee land district."

So, in *Wilcox* v. *Blackwell*, 99 Tenn., 352, 41 S. W., 1061, relied upon by appellants, there was involved a deed containing a recital of record title, the recital being that the grantor had purchased certain interests in the land through registered conveyances from the owners thereof, but these conveyances referred to in the recital were not produced, and this court held that such a recital was insufficient, in the absence of the conveyances themselves, to establish the fact that the owners of such interests had in fact conveyed those interests.   The court said:

"This important recital, however, was not verified by the production of conveyances from those brothers, as should have been done to show that they had in fact parted with their title as claimed, consequently the deed to Wilcox must be held, upon this record and in the absence of such confirmation, to have passed the title to the original share of the grantor only."

It is further contended, however, by learned counsel for appellants, that even if the recitals in an ancient deed be admissible as *prima-facie* evidence, this rule

applies only when the original deed is produced and its custody properly accounted for, and does not apply to a copy certified from the office of the register of deeds. This contention might be sound if the deed had not been on record for thirty years, because it might be entirely possible for a deed, recently recorded, to have been antedated so as to make the date of its execution appear to have been many years prior to the date of its recording. And in such case the original deed, if produced, would probably reveal on its face the fact that it was not as old as it purported to be. But this reason for exclusion does not apply to a copy of a deed which has been on record for thirty years or more. The distinction which we have indicated is clearly made in the case of *Byrd* v. *Phillips*, 120 Tenn., 14, 111 S. W., 1109. There certain recitals in a copy of a deed, purporting to be over thirty years old, were relied upon. But it appeared that the deed had been of record for only five or six years, and no effort was made to account for the custody of the original deed during the time intervening between its assumed execution and its registration. In that case the court said:

"But the deed here, offered and relied upon by complainant, is not an ancient document. It is a copy of a deed purporting, it is true, to be over thirty years old, received, however, for registration, according to the certificate of the register of Scott county, as late as the 27th day of April, 1901. Not only did the complainant content himself with pro-

ducing the copy, but made no effort to account for the custody of the original during the time intervening between its assumed execution and its registration. We think it clear, even if the law be, as insisted, as to the probative effect of the original, that the rule invoked does not apply to such a document as the one offered, and that its recitals cannot be relied upon to make a *prima-facie case.*"

In Warvelle on Ejectment, section 285, it is said:

"In order that a copy from the record of an ancient deed may take the place of the original, when the latter is lost or destroyed, the registration must be shown to be ancient, just as the deed must appear to be ancient when it is itself offered in evidence."

In *Woods* v. *Bonner,* 89 Tenn., 418, 18 S. W., 67, this court had under consideration the direct question as to whether a certified copy of a deed was admissible in evidence as an ancient deed instead of the original, and it was held that it was so admissible. The court said:

"The point and substance of those exceptions is that the deposition of Maurice, and exhibit thereto, should be rejected, because only a copy, and not the original deed, is produced.

"Under the facts already recited, and in the absence of formal authentication of this deed, defendants contend that it may be proven as an ancient paper, and so used as evidence in this case. Complainants say that this cannot be done, because the original deed is not presented in court. The general

rule is that a private deed over thirty years old, as is the one before us, may be admitted in evidence without proof of its execution; that, being an ancient document, its due execution is presumed, and the subscribing witnesses, though in fact living and present, need not be called to establish the fact, provided the instrument be found in the proper custody, and is free from suspicion as to its genuineness. 1 Greenleaf on Evi., secs. 21, 144, 570; 1 Wharton on Evi., secs. 732; *Appelegate* v. *Lexington etc., Mining Co.*, 117 U. S., 263, 6 Sup. Ct., 742, 29 L. Ed., 892.

"Learned counsel for complainants insist, and it has frequently been held, that accompanying possession under the deed must also be shown before it can be admitted in evidence as an ancient instrument without proof of its execution; but this view is contrary to the weight of authority, and cannot be sustained on principle. 1 Wharton on Evi., secs. 199, 733; 1 Greenleaf on Evi., secs. 21, 144, note 1.

"In the discussion of the admissibility of ancient documents as evidence without proof of execution, the text-writers and courts have generally, if not universally, referred to cases in which the original instrument itself, and not a copy, has been produced. Here only a copy if offered, and the question is whether or not it may be used as evidence of the facts recited."

The conclusion of the court is as follows:

"The defendants seem to have done all in their power to procure the original deed, and, failing to obtain it, they bring a certified and proven copy.

Manifestly, this is the best available evidence.    As such it was competent, and should have been admitted.''

In the case of *Williams* v. *Conger*, supra, a certified copy of an ancient deed or power of attorney was introduced, and the supreme court of the United States held that the recitals thereof were properly admitted as *prima-facie* evidence.

In *Railroad* v. *Stealey,* 66 Tex., 468, 1 S. W., 186, an ancient deed was proved by a certified copy thereof, and its recitals were admitted.  See, also, *Hodge* v. *Palms,* 117 Fed., 396, 54 C. C. A., 570.

In Jones on Evidence, vol. 3, sec. 519, it is said:

''From an early period in the history of this country statutes have existed in the several States providing for the recording of conveyances of land which had been duly proved or acknowledged, and providing also that such records or copies, duly authenticated, should be as effectual evidence as if the original had been produced in the court.''

We can perceive no reason why the certified copy of a deed which has been on record for more than thirty years, without the slightest suspicion attached to it, or questioned raised about it, should not have all the probative value that the original would have if produced, and we think that is the effect of our statutes and decisions upon the subject.  We therefore hold, under the authorities above cited, as well as upon reason, that the certified copy of the deed in this case was properly admitted in evidence as an ancient deed.

Another contention made by counsel for appellants is that the deed under consideration is void for vagueness in description of the land.

We do not agree with counsel on this point. The deed refers to the Julian F. Scott entry by its number, which was a special entry upon which a grant had issued. In identifying or describing the land covered by these original entries upon which grants had issued, it seems the old deeds and records refer to the grant number or entry number interchangeably, and counsel do so in their brief, as a means or method of briefly describing the land, the connection between the two being so well understood as to make them identical in meaning. We are not sure that this precise point has ever been adjudged in our cases, but it appears wholly reasonable that, when we clearly see the intention of the parties was to describe the land in the manner stated, such intention should be made effective when the court can accomplish this result by recognizing the legal and actual connection effected between the entry and grant, by the issuance of the latter on the former.

In *Lieberman* v. *Clark,* 114 Tenn., 141, 85 S. W., 258, 69 L. R. A., 732, where a grant was referred to by its number, it was held the description was sufficient. The court said:

"The exceptions were, in substance, that those two deeds did not describe any land. This is a mistake. They refer to the grant by its number, and it describes the land. *'Id certum est quod certum reddi potest.'*"

The other assignment of error made by appellants, affecting complainants' chain of title through the Julian F. Scott grant, is that the chancellor erred in admitting in evidence the certified copy of the will of George F. Brown. We think there was no error in this action of the chancellor. The will was probated before the surrogate of Mercer county, N. J., on April 26, 1881, and a duly certified copy thereof with the certificate of probate was filed in the office of the register of Scott county, Tenn., on May 11, 1881. The certified copy offered in evidence was admissible. See Shannon's Code secs. 3914, 3915.

It is contended, however, that the probate of the will was invalid because it was proved by only one subscribing witness. But proof by one subscribing witness is authorized by our statute. See Shannon's Code, section 3904.

It is next contended that the certified copy does not show any probate of the will at all. The copy first sets forth the entire will *verbatum*, then the affidavit of the subscribing witness, next the oath and qualification of the executor, and lastly the certificate of the surrogate that the above constituted the will and probate thereof, upon which letters testamentary duly issued to the said executor, etc. The will was therefore certified by the proper officer as being duly proved, and letters thereon issued to the executor, and we think that is sufficient. This court so held, under substantially the same facts in *Donegan* v. *Taylor*, 6 Humph., 504, where it is said:

"The other objection which has been taken to the proceedings below is in the reception of the will of Memucan Hunt as a part of the chain of title. The objection is that the record does not show the will to have been properly proven, and that the record of the will and probate are not properly authenticated in the certificate made under the act of Congress. As to the probate, the will is first set forth *in totidem verbis,* and then follows an entry tested of the proper county, State, and court, that the foregoing will of Memucan Hunt was duly proved. The word 'foregoing' imports that the will was spread upon the record preceding the entry of probate; but that is not material. The manner in which different governments may keep their records, whether in books or in files, does not affect their verity, or their nature or character of records. This will and probate are duly and lawfully certified to us to have been such, and must be so received by us. We are of opinion that there is no error in the action of the court below, and we affirm the judgment."

To the same effect, see *McGuire* v. *Hay,* 6 Humph., 422; *Mosely* v. *Wingo,* 7 Lea, 147.

It is also asserted that the will is not properly certified under the act of Congress, but learned counsel do not undertake to point out wherein the certification is defective, and we think it is regular and sufficient.

We therefore hold that there was no error in the action of the chancellor in admitting in evidence the

Fielder v. Pemberton.

certified copy of the deed from Craven Duncan and others to George F. Brown, nor in admitting the certified copy of the will of George F. Brown. These are the only two instruments in the Scott chain of title which are called in question.

From this it results that complainants have deraigned a perfect title from the State through the Julian F. Scott grant, and since appellants concede that this grant is superior to the Eastland grants, it will not be necessary to take up in detail the assignments of error relating to complainants' title under the Eastland grants. It is sufficient to say that we have examined those assignments, and find no error in the rulings of the chancellor therein complained of.

We are therefore of opinion there was no error in the decree of the chancellor, and same is affirmed.