## KEYSTONE STEEL & WIRE CO. v. KOKOMO STEEL & WIRE CO.

(Circuit Court of Appeals, Seventh Circuit. September 13, 1921. Petition for
Rehearing Overruled October 27, 1921.)

No. 2780.

1. Evidence ⊙⊐460(11)—Parol evidence not admissible to vary quantity of goods sold.

Where written contract for sale of steel rods specified the maximum and minimum quantities to be delivered, parol evidence was inadmissible to show that the rods contemplated by the contract were to be manufactured by the seller at its factory, and were to be in quantity only the surplus over and above the seller's requirements of rods in its own business.

2. Appeal and error ⊙⊐1031(2)—In absence of bill of exceptions it will not be presumed that overruling of demurrer to paragraph of answer was not prejudicial because of evidence to sustain other part of answer.

Where, after overruling of demurrer to a paragraph of the answer pleading a parol agreement varying the terms of the written contract of sale sued on, the case was tried and there was a general finding and judgment for defendant, the Circuit Court of Appeals would not presume, in the absence of a bill of exceptions, that there was evidence on the trial to sustain any proper theory of defense admissible under any other part of the answer, so as to render the error in overruling the demurrer harmless.

In Error to the District Court of the United States for the District of Indiana.

Action by the Keystone Steel & Wire Company against the Kokomo Steel & Wire Company. Judgment for defendant, and plaintiff. brings error. Reversed and remanded for new trial.

The complaint alleges that on May 21, 1915, the parties hereto entered into a written contract of purchase and sale of "9,000 to 11,000 gross tons basic rods. Shipments prior to May 31, 1916, in approximately equal monthly shipments. Prices and terms, from July 1, 1915, to November 30, 1915, $27.08 g. t. [gross ton] f. o. b. Peoria. For December, 1915, and January, 1916, $27.58 per g. t. f. o. b. Peoria. From February 1, 1916, to May 31, 1916, $28.08 per g. t. f. o. b. Peoria. The prices December 1, 1915, to May 31, 1916, will be subject to reductions should conditions warrant. * * * Each month's shipments to be treated as a separate and independent contract. * * * Strikes, differences with workmen, accidents to machinery, or other contingencies beyond the control of the seller, to be sufficient cause for any delay in shipment traceable to such cause. Within a reasonable time after removal of such contingency seller is to deliver as rapidly as possible. The purchaser shall give the seller specifications of goods covering shipments, not less than ten days before time of shipment. * * *" That at the time of the making of the contract it was the generally recognized custom, usage, and practice in the. steel trade throughout the United States, that where minimum and maximum quantities were stipulated, the right or option was with the buyer, within such limits to fix the quantity to be delivered. That on May 29, 1915, the buyer (plaintiff in error) ordered from the seller 200 tons for delivery during the ensuing week, on July 2, 1915, 800 tons for shipment during July, and thereafter 1,000 tons per month for shipment in each successive month of the following 10 months, making a total of 11,000 tons, but that the seller (defendant in error) shipped a total of only 9,271 tons. That the balance of the 11,000 tons the seller refused to deliver, and same remained undelivered at the commencement of suit December 18, 1916. That the nondelivery was not caused by strikes or other contingencies in the contract referred to, and that by reason of the nondelivery the buyer was damaged $75,000.

⊙⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Demurrer to the complaint being overruled, answer was filed consisting of—first paragraph, a general denial of each and every allegation of the complaint; second paragraph, admitting the execution of the contract, and the delivery thereunder to the buyer of 9,071 tons, but denying right of recovery for nondelivery of the balance claimed, because at and before the contract was made the seller was a manufacturer of steel wire, wire fence and nails, and was making "basic steel rods" for use primarily in making its own products, but was not engaged in making such rods as a business for selling them on the market, and was not equipped for turning out such rods for the market generally; that at the time the contract was made it was agreed and understood between buyer and seller that the rods were to be manufactured at the seller's factory in Kokomo, Ind., and that the buyer was buying from the seller only part of the buyer's requirements for such rods, and that it would be impossible for the seller to state how many and what quantity of surplus rods over and above its own needs it would have during the contract, and that the rods which the seller would supply under the contract would be only the seller's surplus after its own requirements had been met; that the seller operated its furnaces in a careful manner, and that during the period covered by the contract, the seller, after supplying its own reasonable requirements of such rods, did deliver to the buyer all its surplus of rods manufactured during that time; that because of unavoidable accidents, strikes, and other contingencies beyond the seller's control it was not able to manufacture more of such rods, over and above its own needs, than the quantity which was so delivered to the buyer, and that from time to time as such contingencies would arise it would notify the buyer thereof; that somewhere about December 1, 1915, a representative of the seller informed the buyer that during the early part of the contract there might be delivered the maximum monthly requirement, but that later the shipments would not be beyond the minimum amount; and that in addition to the quantity of rods delivered upon the contract as stated in the answer, there were delivered in May and June of 1915, 800 tons of such rods.

Demurrer to the second paragraph of the answer was overruled, and a general denial of its allegations filed. Jury was waived and the cause submitted to the court, and upon trial by the court there was a general finding and judgment for the defendant in the action.

Chester F. Barnett, of Peoria, Ill., for plaintiff in error.
Conrad Wolf, of Kokomo, Ind., for defendant in error.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] Practically the only proposition which plaintiff in error urges is the alleged error committed in overruling the demurrer to the second paragraph of the answer. We are of the view that, in so far as in that paragraph the defense is rested upon the allegation that the rods contemplated by the contract were to be manufactured by the seller at its Kokomo factory, and were to be in quantity the surplus only over and above the seller's requirements of rods in its own business, it would by parol import into the contract material terms and conditions which the written contract itself did not include, and this the seller cannot be permitted to do. Possibly so much of the paragraph as sets up unavoidable delays in manufacture would raise an issue of fact as to whether or not the alleged occurrences would, under the contract, justify postponement of delivery to a time as late as the date the suit was begun. Manifestly, under the contract, such occurrences would not excuse, but would merely warrant, delay in making shipments.

[2] Jury was waived, the cause was tried by the court, and a general finding made for defendant in error. The District Court clerk

certifies that the transcript shows all proceedings in that court, of record in the cause, and, no bill of exceptions appearing, we conclude there was none. Defendant in error contends that, even though the court erred in upholding the second paragraph of the answer, yet in the absence of bill of exceptions it will be presumed that there was evidence on the trial to sustain any proper theory of defense admissible under any other part of the answer.

If paragraph 2 of the answer were merely an amplification of the general denial, a different question might be presented. But paragraph 2 set up in defense a contemporaneous parol agreement between the parties, which would materially modify the written instrument. The general denial put in issue every allegation concerning the contract, but presented no issue as to any contract other than the one alleged in the complaint. The demurrer to paragraph 2 directly challenged the right of defendant in error to show by parol a contract different from the written instrument sued on, as a basis for the defense of fulfillment of the alleged modified agreement of the parties. In overruling this demurrer the court necessarily held as the law of the case that such modification of the writing might lawfully be shown.

It is true the judgment might have been wholly based on any one of several facts which, under the general denial, might have appeared —that there was no contract as alleged, that the contract had been fully performed by defendant in error, etc. But no special finding appears in the record to indicate that the judgment was so predicated, rather than on the untenable defense of performance of a contract different from the one sued on. The record thus disclosing nothing from which it appears that the indicated error was harmless, it remains a substantial and reversible error in the record on which this judgment is based. Deery v. Cray, 5 Wall. 795, 18 L. Ed. 653; Moores v. Citizens' National Bank, 104 U. S. 625, 26 L. Ed. 870; Miller v. Houston Ry. Co., 55 Fed. 366, 5 C. C. A. 134; Abdil v. Abdil, 33 Ind. 460; Pyle v. Peyton, 146 Ind. 90, 44 N. E. 925.

Defendant in error contends the complaint itself discloses that plaintiff in error was not entitled to recover, in that, as defendant in error maintains, the option as between 9,000 and 10,000 tons was in law with the seller, and that more than 9,000 tons appearing from the complaint to have been delivered, no cause of action was stated. A sufficient answer to this is found in the fact that the complaint also alleges a trade custom to the effect that in such contracts the option is with the buyer. Even if the rule governing the option is as so claimed to be, the rule might not apply if such alleged custom were established by evidence.

The judgment is reversed, and the cause remanded to the District Court for new trial, with direction to sustain the demurrer to the second paragraph of the answer.