# SUPREME COURT OF THE UNITED STATES

## E. I. DU PONT DE NEMOURS & CO. *v.* TRAVIS ABBOTT, ET UX.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 23–13.　Decided November 20, 2023

The petition for a writ of certiorari is denied. JUSTICE KAVANAUGH would grant the petition for a writ of certiorari. JUSTICE ALITO took no part in the consideration or decision of this petition.

JUSTICE THOMAS, dissenting from the denial of certiorari.

Plaintiffs brought negligence claims against petitioner E. I. du Pont de Nemours & Co. (DuPont) on behalf of a class of approximately 80,000 residents for DuPont's discharge of perfluorooctanoic acid into the Ohio River and the air. They alleged that their exposure to the chemical caused a range of diseases. The Judicial Panel on Multidistrict Litigation assigned the cases to multidistrict litigation (MDL). The MDL court directed the parties to identify cases for bellwether trials, which it explained would be informational for the other pending MDL cases. The three resulting trials ended in verdicts for the plaintiffs. DuPont then settled the remaining cases in the MDL.

After the settlement, however, more plaintiffs brought claims, including respondents Travis and Julie Abbott. Relying on the three bellwether trials, the District Court held that DuPont was collaterally estopped from disputing several elements of the Abbotts' (and the other new plaintiffs') claims. Specifically, the District Court prevented DuPont from challenging duty, breach, and foreseeability. The only elements seemingly left unresolved were specific causation and damages. See App. to Pet. for Cert. 131. The jury found for the Abbotts, awarding them roughly $40 million. The

Sixth Circuit affirmed over Judge Batchelder's partial dissent. *In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*, 54 F. 4th 912 (2022).

DuPont now asks us to review the District Court's application of collateral estoppel. I would grant the petition. I have serious doubts about the application of nonmutual offensive collateral estoppel in the MDL context.

Nonmutual offensive collateral estoppel prevents a defendant from relitigating issues that it lost in an earlier case against a different plaintiff. At common law, however, collateral estoppel—also called issue preclusion—required mutuality of parties: A prior judgment prevented only the same parties from relitigating settled issues in a new case between them. See, *e.g., Hopkins* v. *Lee,* 6 Wheat. 109, 113 (1821); *Deery* v. *Cray*, 5 Wall. 795, 803 (1867). In *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322 (1979), the Court relaxed the mutuality requirement for a plaintiff's offensive use of collateral estoppel. But the Court cautioned that this preclusion should not be used when "the application of offensive estoppel would be unfair to a defendant." *Id.*, at 331.

Extending *Parklane* to the MDL context seems illogical and unfair. First, an MDL is a mechanism for streamlining pretrial proceedings; it is not designed to fully resolve the merits of large batches of cases in one fell swoop. When several courts face cases involving common questions of fact, an MDL pools resources by having one court handle the pretrial proceedings for all related cases simultaneously. An MDL's scope, however, is limited to pretrial proceedings. See 28 U. S. C. §1407(a). Once pretrial proceedings are complete, the MDL court *must* remand the cases back to their originating courts to be resolved on the merits. *Ibid.* ("Each action so transferred *shall be remanded* by the panel at or before the conclusion of such pretrial proceedings . . . " (emphasis added)); see also *Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach*, 523 U. S. 26, 40

(1998). Although the MDL court may hold bellwether trials, I have not yet seen evidence that they are anything more than "*nonbinding* trial[s] . . . held to determine the merits of the claims and the strength of the parties' positions on the issues." Black's Law Dictionary 190 (11th ed. 2019) (defining "*bellwether*" (emphasis added)); see also 4 W. Rubenstein, Newberg and Rubenstein on Class Actions §11:20, and n. 13 (6th ed. 2022). Indeed, the MDL court here shared that understanding and described the bellwether trials as helpful "information gathering." *In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*, No. 2:13–md–2433 (SD Ohio 2016), ECF Doc. 4624, p. 100947. It is quite a stretch to use a mechanism designed to handle only pretrial proceedings to instead resolve multiple elements of a claim based on a few nonbinding bellwether trials. This use of nonmutual offensive collateral estoppel is far afield from any this Court has endorsed.

Second, expansive use of nonmutual offensive collateral estoppel in the MDL context raises serious due process concerns. See *Taylor* v. *Sturgell*, 553 U. S. 880, 891 (2008) ("[P]reclusion is . . . subject to due process limitations"). Although not without limits, it is "part of our deep-rooted historic tradition that everyone should have his own day in court." *Richards* v. *Jefferson County*, 517 U. S. 793, 798 (1996) (internal quotation marks omitted). Application of this type of collateral estoppel in an MDL, however, could prevent a defendant from raising a defense in potentially thousands of cases. It would make no difference if other MDL plaintiffs have material differences that would prevent them from making their required showing on that element—once nonmutual offensive collateral estoppel has been applied, a defendant's hands are tied. In fact, a defendant cannot raise a defense even if there was *no notice* that bellwether trials would dictate the results of every MDL case. Collateral estoppel also must contend with a defendant's right to a jury trial. See *Parklane*, 439 U. S., at

346–347 (Rehnquist, J., dissenting). In short, applying non-mutual offensive collateral estoppel in the MDL context runs afoul of this Court's warning that preclusion should not be used when "the application of offensive estoppel would be unfair to a defendant." *Id.*, at 331.

The MDL here is a case in point. The MDL court originally told the parties that the bellwether trials would be informational and "would facilitate valuation of cases to assist in global settlement." ECF Doc. 4624, at 100947. Yet, the MDL court later treated them as binding. Far from mere gauges of the parties' claims, the three trials turned out to be DuPont's only chance to litigate several elements of claims brought by numerous different plaintiffs. The MDL court thus used a tiny fraction of the cases against DuPont to impose sweeping liability—all without any warning to DuPont of the bellwether trials' import.

The MDL court's ruling was not only breathtaking in its scope, but it also disregarded the fact that the three bellwether trials were not representative of the cases against DuPont. For example, two bellwether plaintiffs drank water from wells that were less than one-third of a mile from DuPont's plant; the Abbotts' water, by contrast, came from wells 14 to 56 miles away. Two bellwether plaintiffs asserted exposure through air emissions, in addition to exposure through drinking water; the Abbotts' alleged exposure was only through their water. These differences in location and source of exposure are material to each plaintiff's claim that DuPont injured him through its negligent discharge of the chemical: "Any combination of these factual differences could lead a jury to find that a particular plaintiff's injuries were not reasonably foreseeable and, therefore, that DuPont did not owe or breach a duty of care." 54 F. 4th, at 943 (Batchelder, J., concurring in part and dissenting in part). And, of course, the third bellwether plaintiff was chosen not as a representative case, but as one of "the most severely impacted plaintiffs." ECF Doc. 4624, at 100962.

Given the differences among plaintiffs, DuPont may have lost the first three trials, but perhaps it would have won the rest. Under the MDL court's ruling, however, DuPont had no chance to find out.

The preclusion was also entirely one sided: While plaintiffs were able to use their bellwether trial wins against DuPont, if the roles were reversed, DuPont could not have asserted collateral estoppel against new MDL plaintiffs without violating those plaintiffs' due process rights. See *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Foundation*, 402 U. S. 313, 329 (1971) (explaining that "[d]ue process prohibits estopping" those litigants "who never appeared in a prior action"). DuPont had all of the downside without any potential for upside. The lopsidedness of the preclusion adds to the potential for unfairness.

I have doubts about whether the application of nonmutual offensive collateral estoppel based on bellwether trials comports with due process. Given that MDLs constitute a large part of the federal docket, this issue should be resolved sooner rather than later. We should not sacrifice constitutional protections for the sake of convenience, and certainly at least not without inquiry.